EDWIN H. McHENRY and Another v. LARS O. NYGAARD.

April 22, 1898.

Nos. 10,871—(276).

**Public Land—Decision of Controversy by Secretary of Interior—Action of Ejectment before Issue of Patent—Jurisdiction of Court.**

In a contest between the Northern Pacific Railroad Company and the defendant as to which was entitled to a tract of land (each claiming under the United States), the secretary of the interior fully and finally decided the controversy, awarding the land to the defendant, to whom a final receiver's certificate was issued, reciting that he was entitled to a patent. In an action of ejectment by the receivers of the railroad company against the defendant, *held*, that the court had jurisdiction of the subject of the action, and to determine the rights of the respective parties to the land, although no patent had been issued.

**Same—Indemnity Limits of N. P. R. R.—Claim of Homestead—Mere Occupancy—Necessity of Entry.**

Assuming, without deciding, that lands within the indemnity limits of the Northern Pacific Railroad Company are subject to homestead entry until actually selected by the company for indemnity purposes, mere occupancy and cultivation by another, without any attempt to comply with the homestead law by applying to enter the land, or by placing the claim on record in the land office, will not defeat the company's right of selection.

**Same—Selection by N. P. R. R.—Refusal by Land Department to Approve—Effect.**

When the company, in accordance with all the requirements of law, makes a selection of indemnity lands, and duly files its list of selections, its right to the lands cannot be defeated or affected by the arbitrary and wrongful refusal of the officers of the land department to approve the selections.

Appeal by defendant in an action of ejectment brought against him by Edwin H. McHenry and another, as receivers of the North-

ern Pacific Railroad Company, from an order of the district court for Otter Tail county, Baxter, J., overruling his demurrer to the complaint. Affirmed.

*John H. Allen* and *Parsons & Brown*, for appellant.

As the patent to the land in controversy had not been issued at the date of the beginning of this action, the question of the title to the land was still within the executive branch of the government, and had not reached that point where the courts could assume cognizance of it; and the court, therefore, has no jurisdiction of the subject of the action. While the question of the right of a party claiming title to lands to which no patent has been issued to bring an action of ejectment in a state court whose system of procedure allows such an action to be brought upon an equitable title does not appear to have been directly passed upon by the United States court, it is nevertheless a fair inference from their many adjudications upon the scope of the powers of the land department that such an action cannot lie until the land department has in regular course completed its duties delegated to it by law, in the matter of transfer of title from the United States. Johnson v. Towsley, 13 Wall. 72; U. S. v. Schurz, 102 U. S. 378; Marquez v. Frisbie, 101 U. S. 473. In this case the title to the land is unquestionably in the United States. Carter v. Ruddy, 166 U. S. 493. It is still within the control of the officers of the land department. Before the issuance of a patent that department may recall and cancel any entries of the public lands. Randall v. Edert, 7 Minn. 359 (450); Judd v. Randall, 36 Minn. 12.

The attempted withdrawal of the land from entry made in January, 1872, was illegal, and without effect, for the provisions of the granting act, so far from authorizing an executive withdrawal of indemnity lands, are an express prohibition upon the power to make such withdrawal. The right of withdrawal under this act is wholly statutory and extended only to the granted or "place" lands. A withdrawal of land for indemnity purposes operates only as a notice of the limits within which the company will be entitled to select indemnity. Northern v. Miller, 7 L. D. 100; Northern v. Fugelli, 10 L. D. 288; Spicer v. Northern, 10 L. D. 440; Northern

v. Davis, 19 L. D. 87; Prince v. Eheim, 55 Minn. 36; Buttz v. Northern, 119 U. S. 55, 71; Grandin v. LaBar, 3 N. D. 446.

The granting act excepts from the operation of the grant all "lands which shall have been occupied by homestead settlers or pre-empted" prior to the filing in the land office of the plat of definite location of the road. In this respect it differs from the provisions of other railway granting acts which usually except lands "to which a pre-emption or homestead claim may have attached at the time the line of said road is definitely fixed." Under the granting act to the Northern Pacific Railroad Company, therefore, mere occupation or cultivation of the premises at the time of the filing of the map was sufficient to exclude the tract from the operation of the land grant. As no selection of the lands in controversy had been made by the railroad company at the time of the defendant's settlement thereon, it follows that defendant's settlement and occupancy gave him a right prior to that of the railroad company.

Although as between the beneficiaries of two railway grants a selection is unnecessary where all of the indemnity lands are insufficient in quantity to make up the loss from the granted or place lands (St. Paul v. Northern, 139 U. S. 1), yet where the controversy is between the railway company and settlers a selection is necessary to vest rights. U. S. v. Colton, 146 U. S. 615; Sage v. Swenson, 64 Minn. 517.

Even if defendant's occupancy gave him no rights, such rights fully attached to the land upon his application to enter made in November, 1887. His application to enter the lands, though rejected by the officers of the local land office, preserved his rights as fully as if it had been accepted. Shepley v. Cowan, 91 U. S. 330. The defendant's right to enter was not lost by his failure to make his application within the statutory time after the settlement. Johnson v. Towsley, supra. Defendant made his application immediately upon the revocation by the interior department of the withdrawal of these lands from entry. Until such revocation it would have been useless for him to make application, and he had a reasonable excuse for not complying with the statute in that respect within the case of Cahalan v. McTague, 46 Fed. 251.

The attempted selection by the railroad company in 1885 was invalid for the reasons: (1) Because the company failed to designate upon its selection list the losses from its grant in lieu of which the selection of the lands in controversy was made; and (2) because it does not appear that the selection was approved by the secretary of the interior. Resser v. Carney, 52 Minn. 397; U. S. v. Missouri, 141 U. S. 358; Grandin v. LaBar, supra.

*James B. Kerr* and *C. W. Bunn,* for respondents.

In this state an action to recover real estate may be maintained by one who is the equitable owner, but who has not the legal title. Merrill v. Dearing, 47 Minn. 137. It is also true that one may be the equitable owner of land acquired from the United States before the issuance of a patent. County v. Hunter, 42 Minn. 312.

In this case the railroad company became equitable owner of the land upon filing its selection in the land office, and the secretary of the interior had no authority to refuse to recognize and approve the selection. Southern v. Wiggs, 43 Fed. 333; Minneapolis v. Duluth, 45 Minn. 104; St. Paul v. Winona, 112 U. S. 720. The equitable title is certainly not in the United States for it has issued its final certificate. A final receipt issued to one who has done all things required by law vests in him full title against the United States. Cornelius v. Kessel, 128 U. S. 456. The decision of the supreme court of the United States in Moore v. Robbins, 96 U. S. 530, is conclusive upon the proposition that, where the secretary of the interior has committed an error of law, and has awarded a tract of land to one party to which another is rightfully entitled, and a receiver's final receipt has issued, the courts will assume jurisdiction before patent and adjust the equities of the parties.

The land department erred in awarding the land to the defendant for the reasons:

(1) Even if the land in question had been subject to homestead entry during the period of its occupation by the defendant, his mere occupation without an entry or an application in the proper land office was not sufficient under the terms of the grant to the company to invalidate the company's selection. 21 U. S. St. 141, § 3; 5 U. S. St. 620, § 3; 5 U. S. St. 457, § 15; Northern v. Colburn, 164 U. S. 383.

(2) The land in question was withdrawn from, and not subject to, homestead entry during the period of the defendant's occupation, and up to the time of the company's selection in 1887, by virtue of the executive order received at the land office at Alexandria January 6, 1872. This withdrawal was confessedly sufficient to prevent the acquisition of any rights by the defendant prior to the selection of the railroad company, June, 1885, if the land department had the same authority to withdraw lands from entry for the benefit of the Northern Pacific Railroad Company which it had in other cases. The general authority of the land department to make such withdrawal has been uniformly sustained. Wolcott v. Des Moines, 5 Wall. 681, 687; Wolsey v. Chapman, 101 U. S. 755; Spencer v. McDougal, 159 U. S. 62; Sage v. Swenson, 64 Minn. 517.

The decision of the secretary of the interior in the case at bar holding the withdrawal for the benefit of the railroad company inoperative to prevent acquisition of homestead rights is based upon the decision in the case of Northern v. Miller, 7 L. D. 100. This decision was considered in the case of Thompson v. St. Paul, 83 Fed. 546, in which the court held that the withdrawal was valid and the secretary of the interior was in error in holding otherwise. The proposition of the secretary of the interior that, congress having ordered a withdrawal by statute, it must be assumed that this withdrawal was intended to be exclusive of any executive withdrawal, meets with a conclusive answer in the case of Wood v. Beach, 156 U. S. 548, where a direction to the secretary to withdraw from the market "the lands granted by this act" was held not to exclude his authority to withdraw indemnity lands. If it be contended that indemnity lands are lands granted, then the land in controversy in this case was withdrawn by virtue of section 6 of the granting act.

The officers of the land department have uniformly construed the Northern Pacific granting act to authorize a withdrawal of lands within the indemnity limits, and under this settled construction more than forty orders of withdrawal were issued from December 12, 1871, to December 1, 1884. Prest v. Northern, 2 L. D. 506. See also letter of instruction of Secretary Teller to the commissioner of the general land office dated May 17, 1883, 2 L. D. 512. This

construction was unquestioned until the decision of Secretary Vilas in the Guilford-Miller case. The decisions of the supreme court of the United States are uniform in regarding with great respect the contemporaneous construction of the land department. U. S. v. Moore, 95 U. S. 760; U. S. v. Macdaniel, 7 Pet. 1; U. S. v. Pugh, 99 U. S. 265.

(3) Aside from any question of the withdrawal by the executive order of January 6, 1872, it is contended that the land in question has been withdrawn from homestead entry, by the provisions of section 6 of the granting act, from the time of the filing of the map of general route, October 12, 1870. Southern v. Wiggs, 43 Fed. 333; St. Paul v. Northern, 139 U. S. 1.

(4) Where all of the lands in the indemnity limits were insufficient to satisfy the losses in the place limits, the indemnity lands were all appropriated without selection and the company became at once equitable owner of the land in question by virtue of such deficiency; for the vesting of the title to place lands and indemnity lands is distinguished merely by the means of identification of the two classes of lands. Lands in place are identified by the definite location of the line of road, while indemnity lands are identified by selection. Minneapolis v. Duluth, 45 Minn. 104; St. Paul v. Winona, 112 U. S. 720. As soon as lands are ascertained as falling within the terms of the grant, they cease to be public lands and pass to the grantee. If a selection was not necessary to identify the lands and place the company in privity with the United States, what further was required by the law to be done to earn the lands than was in fact done? The railroad company does not take title to indemnity lands by the selection; the function of the selection being merely to identify the lands as falling within the grant, when the title at once passes.

MITCHELL, J.

This was an action of ejectment. The defendant demurred to the complaint on the grounds, (1) that the court had no jurisdiction of the subject of the action; (2) that the complaint did not state a cause of action. From an order overruling the demurrer, the defendant appealed.

The complaint is very voluminous, but all the facts that can be at

all material under any view of the case may be briefly stated as follows:

July 2, 1864, congress passed what is known as the "Northern Pacific Land Grant Act," covering what are known as the "granted limits" and the "first indemnity limits" of the road. May 31, 1870, congress, by joint resolution, provided further indemnity for losses of granted or "place" lands, by fixing the second indemnity limits. October 12, 1870, the Northern Pacific Railroad Company filed a map or plat showing the proposed general route of its railroad. The land here in controversy is an odd-numbered section, within 20 miles of this line. In November, 1871, the company definitely located its line, and caused to be accepted by the secretary of the interior, and filed in the office of the commissioner of the general land office, its map of definite location. The land in controversy is within 30 miles of said line, and hence within the company's first indemnity limits.

In January, 1872, the commissioner of the general land office instructed the local land officers to withdraw from sale or homestead entry all lands within the granted or indemnity limits of the road, as determined by the map of definite location. In 1882 the defendant, a qualified homesteader, settled upon the land, and has ever since occupied and cultivated the same, but never filed upon or made application to enter it as a homestead until November, 1887. June 19, 1885, the company, complying in all respects with the instructions of the secretary of the interior, and under his directions, selected the land in question as indemnity land, and on the same day filed in the proper district land office a list showing its selections; but the officers of the land office wrongfully, and without authority of law, refused to approve the selection.

At the time of the definite location of the line of road, all the lands in the indemnity limits were insufficient to satisfy the losses in the place limits arising from previous appropriations and dispositions. In October, 1887, the secretary of the interior revoked the withdrawal order of January, 1872.

November 10, 1887, the defendant made application at the proper district land office to enter the land as a homestead, but his application was rejected, and thereupon he appealed to the commissioner

of the general land office. March 9, 1889, the commissioner of the general land office affirmed the action of the district land office and thereupon the defendant appealed to the secretary of the interior. August 11, 1894, the secretary of the interior ordered a hearing before the district land office for the purpose of adducing evidence as to the condition of the land at the date of its selection by the railroad company. January 5, 1895, the district land officers rendered a decision recommending the cancellation of the selection of the company, and the allowance of the entry of the land by the defendant as a homestead. Thereupon the company appealed. May 9, 1895, the commissioner of the general land office affirmed the decision of the district land officers. Thereupon the company appealed to the secretary of the interior. June 6, 1896, the secretary of the interior affirmed the decision of the commissioner, and ordered the cancellation of the company's selection, and the allowance of the defendant's entry as a homestead, which was thereupon done, and a final receiver's certificate issued to him, reciting that he was entitled to a patent for the land. But no patent has yet been issued.

Inasmuch as the legal points involved present federal questions, of which the supreme court of the United States is the final arbiter, it would be useless for us to discuss them at length, or to do much more than state our conclusions upon such of them as are necessary to the decision of this appeal.

1. Defendant's contention in support of his first ground of demurrer is, to use the language of his counsel, "that the question of the title of the land is still within the executive branch of the government, and has not yet reached the point where the judicial department may assume cognizance of it,"—in other words, that the matter is still in fieri, and under the control of the land department.

We are of opinion that this contention is not sound. It is, of course, familiar law that the courts—state or federal—have no right to invade the functions confided by law to other departments of the government, and interfere with the discharge of their duties in matters exclusively intrusted to their determination in the first instance, so long as these matters are still pending and undetermined. But after they have fully exercised their functions, and

finally determined the matter, the question becomes one of private right, and in determining that right the correctness of the action of the department becomes a proper subject of judicial inquiry.

In the present case the rights of the parties have been fully and finally determined by the secretary of the interior, and nothing remains to be done, except the merely ministerial act of issuing a patent, which will be evidence of the right previously acquired, and will, when issued, relate back to the date of entry. Whichever party is entitled to the land, nothing now remains in the United States except the bare legal title. The equitable title is in either the plaintiffs or the defendant. There is now no question pending and undetermined before the land department. The mere fact that, by reason of the non-issuance of a patent, the department still has the power to reopen the case and reverse its decision, does not deprive the courts of jurisdiction to inquire into its correctness when determining a question of private right between conflicting claimants.

The action of the courts in awarding the possession of the land to one or other of them will not deprive the department of this power, or devest the United States of the legal title. There is no presumption that the land department will ever reopen the case, or reverse its decision. It may, and presumably will, never do so; and, so long as its decision stands, it is a final determination of the matter, and there is now nothing pending and undetermined before the department. Neither party can compel the secretary of the interior to issue a patent, and, if the courts have no jurisdiction until one is issued, the defendant is not likely to request its issuance. Hence, if his contention is correct, the defendant may remain quietly in possession to the end of time, and the plaintiffs will be utterly powerless to assert their claim to the land, or to test in the courts the correctness of the decision of the department.

Counsel for the defendant feel compelled to concede in their brief that the courts have in certain cases jurisdiction of the equitable title to lands while the legal title remains in the United States; but their contention is that, in a case like the present, if the department has decided erroneously as to which party is entitled to a patent the error cannot be corrected in an action at law, but is the

basis only for equitable relief. It seems to us that by this concession counsel give away their whole case. The question here is not as to the form or nature of the judicial remedy, but whether the courts have any jurisdiction at all over the subject-matter. If the matter is still in fieri in the land department, the courts have no jurisdiction to grant any form of relief, either legal or equitable. In the federal courts, where the distinction between law and equity is still preserved, an action in ejectment could not be maintained upon an equitable title, but the rule is otherwise in this state. But on the question of jurisdiction the rule is the same in the state as in the federal courts. The only difference between the two is that, so far as the questions involved are federal ones, the final judgments of the state courts are reviewable, on a writ of error, by the supreme court of the United States. State v. Bachelder, 5 Minn. 178 (223).

The authorities upon the precise point under consideration are rather meager, inasmuch as, in most of the cases where the correctness of the decisions of the land department have been passed upon, patents had in fact been issued. Moore v. Robbins, 96 U. S. 530, would seem to support the contention of the plaintiffs. Counsel for defendant cite Marquez v. Frisbie, 101 U. S. 473, as a decision in their favor. In that case the plaintiff himself was in possession, and the relief which he sought was that his right to the legal title, which was still in the United States, should be decreed paramount to that of the defendant, to whom the department had awarded the land; and the court seems to have viewed this as an attempt to transfer the legal title to the plaintiff, remarking that "it is impossible to transfer a title which is still in the United States." The court also cites Moore v. Robbins, supra, without any suggestion of disapproval.

Orchard v. Alexander, 157 U. S. 372, 15 Sup. Ct. 635, and Pierce v. Frace, Id., when considered in connection with the same cases in 2 Wash. St. 81, 26 Pac. 192, 196, also seem to support the position of the plaintiffs. In those cases the question of jurisdiction had been squarely raised and passed upon in the state court. This being apparent on the face of the record, a consideration of the cases on the merits by the supreme court of the United States would seem

to amount to an implied holding that the court had jurisdiction of the subject-matter.

2. Whether the provisions of section 6 of the act of 1864 amounted to a statutory withdrawal of indemnity land, whether the same section prohibits an executive withdrawal, and whether the indemnity lands were appropriated to the grant without any selection by the company, by reason of the fact that there was not enough of lands in the indemnity limits to make up the losses in the place limits, are questions which it is not necessary to consider. We shall assume, without deciding, that the first and third of these questions should be answered in the negative, and the second in the affirmative; also, that this land remained subject to homestead entry until actually selected by the company for indemnity purposes.

Under the allegations of the complaint, admitted by the demurrer, this land was within the indemnity limits of the grant, and the railroad company had a right to select it for indemnity purposes,—at least, until some other right attached. While the defendant entered into the occupancy and cultivation of the land in 1882, yet he did nothing by way of compliance with the homestead law, and made no application to enter it as a homestead, until November, 1887. Mere occupation and cultivation, without compliance with the law in the matter of placing the claim on record in the land office, was insufficient to defeat the right of the railroad company, under its grant, to select the land for indemnity purposes. Northern v. Colburn, 164 U. S. 383, 17 Sup. Ct. 98.

Under the categorical allegations of the complaint, it must be taken as true that the railroad company duly, and in compliance with all the requirements of law, selected this land for indemnity, and duly filed a list of their selections in the land office in June, 1885, but that the land officers wrongfully and unlawfully refused to approve them. Although the selection of the lieu lands was to be made under the direction of the secretary of the interior, they were to be selected by the railroad company, and not by the secretary. If the company was entitled to select the land, and did so in conformity with all the requirements of law, the officers of the land department had no authority arbitrarily to refuse to recognize and ap-

prove the selection. The rights of the company under its selection became fixed and vested notwithstanding such rejection and refusal. Southern v. Wiggs, 43 Fed. 333; St. Paul v. Winona, 112 U. S. 720, 5 Sup. Ct. 334. This selection was made about two years and four months before defendant made any application to enter the land as a homestead. This disposes of the case.

We have assumed that a patent is necessary to transfer the legal title of indemnity lands from the United States to the railway company. The act of 1864 was a grant, as well as a law, and it has been repeatedly decided that in such cases a patent is not necessary to vest the railroad company with the legal title of place lands. St. Paul v. Northern, 139 U. S. 1, 11 Sup. Ct. 389; Deseret v. Tarpey, 142 U. S. 241, 12 Sup. Ct. 158; Northern v. Colburn, supra. Whether a patent is necessary to transfer the legal title of lieu lands, we are not prepared to say. We have not met with any case where the question has been passed upon.

Order affirmed.

CANTY, J. (dissenting).

I cannot concur. I am of the opinion that the courts have no jurisdiction to dispose of the legal title to the land until that title has passed out of the United States. The controversy between the plaintiffs and defendant is still pending in the land department of the federal government, and the matter will not become functus officio in that department until the patent issues. The controversy between the parties cannot be transferred to the courts until the matter becomes functus officio in the land department. Marquez v. Frisbie, 101 U. S. 473; Johnson v. Towsley, 13 Wall. 72.

"If they [the register and receiver] give patents to the applicants for pre-emption, the courts can then, in the appropriate proceeding, determine who has the better title or right." Litchfield v. Register, 9 Wall. 575, 578.

See, also, last paragraph of Gaines v. Thompson, 7 Wall. 347. The only case cited in which the United States supreme court have acted in disregard of this principle is Moore v. Robbins, 96 U. S. 530, and there the question does not appear to have been raised.

The majority give as a reason for their position that while the

defendant is enjoying the benefit of the property the patent may never issue at all. True, the land department, by neglecting to issue a patent, may prejudice the rights of individuals; but there are many other instances in which the executive department of the government may prejudice the rights of individuals by delay and neglect, yet the mere possibility of such delay or neglect will not give the courts jurisdiction in matters in which they would not otherwise have it.

The position of the majority seems to be that, because the land department may neglect its duty, therefore the judgment of the court should supplant and supersede the patent, and be substituted for it. If this is not their position, then what other function will the judgment perform? Unless the land department sees fit to recognize the judgment, the plaintiffs will be in no better position to demand the patent after they have obtained their judgment than they were before, and the obtaining of the judgment will not hasten the issuing of the patent. The court could not in such a case enter a judgment which would be binding on the land department, even if the officers of that department were made parties to the suit. The patent must be signed by the president, and no proceeding in court will lie to compel its issue. Secretary v. McGarrahan, 9 Wall. 298, 314.

Then after the plaintiffs obtain their judgment the land department may go on and issue its patent without any interference from the court, and the plaintiffs must, after the patent is issued, commence a new action to have the title declared held in trust for them. In order to obviate the necessity for bringing such second action, the majority must hold that the judgment in the first action supplants, supersedes, and annuls in advance any patent that may thereafter be issued to any person other than the plaintiffs or their railway company; in other words, that the court has supplanted the land department, and has itself issued the patent.

In my opinion, the courts cannot usurp the powers of the executive in any such manner. Before the patent issues the courts may deal with the mere question of possession pending the proceedings in the land department, and may award such possession to the party showing such equitable title as entitles him to it. Such were

the cases of Orchard v. Alexander and Pierce v. Frace, 157 U. S. 372, 15 Sup. Ct. 635; s. c. 2 Wash. St. 81, 26 Pac. 192, 196. These were merely actions in ejectment. Berthold v. McDonald, 22 How. 334, was also an action of ejectment. On one day the board appointed under the statute confirmed the land to one party, and on the next day to the other party, in apparently independent proceedings. It was held that each party had an equitable title, that they stood on an equal footing before the courts, and that in order to determine which should have the possession the court must go behind the conflicting confirmations, and ascertain which of them should in justice and equity prevail. That case does not assist plaintiffs.

There are cases where congress has so completely disposed of public land that the department has no power to issue a patent for it to any one other than the one designated by congress, and a patent erroneously issued to some one else is absolutely void. In such a case an action will lie by a private party to cancel the patent. But this doctrine has no application to cases where the disposal of the land in question is committed to the land department, and its officers must exercise their judgment and discretion in determining who is entitled to the land. In such a case the issuing of the patent is the final and authentic act in the exercise of such judgment and discretion, and, if the patent is issued to the wrong person, it is not void. It transfers the legal title from the government, and the rightful claimant must then pursue that title in equity, and cannot pursue it before.

I am also of the opinion that the title to this land must pass from the government by patent. The land here in question is claimed by plaintiffs, under the grant to the Northern Pacific Railroad Company, as indemnity land. It seems to me that the grant of such lands was not one in præsenti. The right to such indemnity land would naturally depend on the existence and proof of so many extrinsic facts that it is fair to presume that congress intended that the title should pass by patent. Believing that the court has no jurisdiction to pass on the merits in this case, I decline to consider them.