[No. 13829.   In Bank. — June 18, 1892.]

## JAMES F. JATUNN, Appellant, v. J. M. SMITH et al., Respondents.

Prescription — Adverse User of Water — Public Lands — Grant from Government. — There can be no adverse possession of land, or adverse user of water to the natural flow of which such land is entitled, so long as the title to the land remains in the United States; but a prescriptive right to the use of water may be acquired after the legal title of such land has vested in a grantee of the government.

Id. — Grant to Central Pacific Railroad Company — Vesting of Title. — The grant of land to the Central Pacific Railroad Company, by the acts of Congress of July 1, 1862, and July 2, 1864, to aid in the construction of its road, was a grant in præsenti, passing the legal title to the lands granted as of the date of the grant, as soon as the sections were identified by a legal survey and the definite location of the road.

Id. — Patent for Railroad Land — Diversion of Water — Statute of Limitations. — As the legal title to land granted to the Central Pacific Railroad Company vested in the company upon identification of the land, and not at the date of the patent issued by the United States, the statute of limitations commenced to run in favor of one who diverted the waters of a stream upon the land after such identification and prior to the date of the patent, from the date of the diversion, as against the railroad company and its grantees.

Id. — Effect of Grant — Adverse Possession — Subsequent Patent. — When the legal title to land is granted by act of Congress, the title of the government is as effectively divested as it would be by the issuance of a patent therefor by the executive department under authority of law, and such land then becomes subject to the limitation laws of the state in which it is situated, and an adverse possession thereof, after the date of such grant for the requisite period fixed by such laws, will ripen into a legal title in favor of the adverse possessor, and the effect of such possession is not interrupted or defeated by the subsequent issuance of a patent therefor in pursuance of such act of Congress.

Id. — Recitals in Patent — Survey and Identification of Land Granted — Payment of Costs and Fees. — The recitals in the patent from the United States to the Central Pacific Railroad Company, showing that the line of the railroad was definitely located, and that the company afterward filed with the register and receiver at Sacramento a selection of the land under the acts of Congress, and that such selection was properly certified to or approved by such register and receiver, are sufficient proof of the fact that the land was at the date of its selection surveyed by authority of the United States, and identified as land to which the grant made to the company had then attached, and that the costs of such survey and other fees required by law had been paid by such company.

Appeal from a judgment of the Superior Court of Nevada County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*C. W. Kitts*, for Appellant.

*P. F. Simonds*, for Respondents.

DE HAVEN, J.— The plaintiff is the owner of a tract of land through which flows a stream of water known as Wolf Creek, and the defendants, more than five years prior to the commencement of this action, diverted the waters of said stream at a point above where it enters upon the land of plaintiff. This action is brought for the purpose of enjoining the defendants from hereafter taking or diverting any of the waters of said stream, and for a judgment that plaintiff is entitled to have the stream flow down its natural bed and across the land of plaintiff.

In their answer, the defendants allege that plaintiff's cause of action is barred by the statute of limitations. The plaintiff was nonsuited, and from this judgment he appeals.

The land owned by plaintiff is an odd-numbered section, which was granted to the Central Pacific Railroad Company to aid in the construction of its road by the acts of Congress of July 1, 1862 (12 U. S. Stats. at Large, 489), and July 2, 1864 (13 Stats. at Large, 356), and the patent therefor did not issue to the railroad company until April, 1884, which was less than five years before this action was brought. The railroad, however, was constructed from Sacramento to the Nevada state line, and fully completed and equipped in the manner prescribed by said acts of Congress, as early as November 3, 1869, and this fact was on that day properly certified to by the commissioners appointed by the President for the purpose of examining and reporting in relation to the construction of said road, as is shown by the recitals contained in the patent.

The title of plaintiff to the land owned by him is founded upon a deed executed to him by the Central

Pacific Railroad Company, in December, 1884, after it obtained its patent from the United States. The defendants diverted the waters of Wolf Creek in 1874, and it is not claimed by the appellant that the evidence given upon the trial in the superior court was insufficient to show that such diversion was thereafter continued under claim of right, and under such circumstances as to ripen into a prescriptive right in defendants, if the statute of limitations commenced to run in their favor prior to the date of the patent issued by the United States to his grantor, the railroad company.

The contention of appellant is, that the United States, *by its patent*, conveyed to the railroad company the legal title to the land now owned by him, with all its natural riparian rights as they existed at the date of the definite location of the railroad, and that as defendants could not hold adversely to the United States, they can derive no advantage from their acts of diversion and user prior to the date of the United States patent.

It was held by this court in the case of *Mathews v. Ferrea*, 45 Cal. 51, that there could be no successful assertion of a claim to a prescriptive right to divert waters from a stream, to the injury of a riparian proprietor below who had acquired his title from the United States within five years, the court in its opinion saying that " prescription or adverse user will not mature into a title as against the United States, and that it will not avail as a defense unless the user has been adverse for the requisite period after the title passed from the United States."

There can be no doubt of the correctness of the rule as thus declared. The general government is not subject to the jurisdiction of the state, and the latter is without power to prescribe the time within which the United States shall assert its rights in order to preserve them, and it must be regarded as settled that the statute of limitations of a state does not apply to the government of the United States, and, as a consequence, that there can be no adverse possession of land under such a law,

or adverse user of water, to the natural flow of which such land is entitled, while the title remains in the United States. (*Freemont* v. *Seals,* 18 Cal. 434; *Nessler* v. *Bigelow,* 60 Cal. 98; *Gardiner* v. *Miller,* 47 Cal. 470; *Treadway* v. *Wilder,* 12 Nev. 108; *Gibson* v. *Choteau,* 13 Wall. 98.)

But we are unable to agree to the proposition contended for by appellant, that the legal title to the land owned by him remained in the United States until the issuance of the patent therefor to the Central Pacific Railroad Company, in 1884, and that the effect of such patent was to then convey to the railroad company the legal title to such land, with all the riparian rights which belonged to it at the time of the definite location of the line of such railroad. On the contrary, the grant of land to that company by the acts of Congress of July 1, 1862, and July 2, 1864, to aid in the construction of its road, was a grant *in præsenti* of every alternate section of land not reserved by such granting acts, passing the legal title thereto as of the date of the grant, as soon as those sections were identified by a legal survey, and the definite location of the road for which the grant was made.

In defining the nature of the grant made by the acts of Congress just mentioned, the supreme court of the United States, in the case of *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 241, say: "As the sections granted were to be within a certain distance on each side of the line of the contemplated railroad, they could not be located until the line of the road was fixed. The grant was, therefore, in the nature of a 'float'; but when the route of the road was definitely fixed, the sections granted became susceptible of identification, and the title then attached as of the date of the grant, except as to such parcels as had been in the mean time under its provisions appropriated to other purposes. . . . . The terms used in the granting clause of the act of Congress, and the interpretations thus given to them, exclude the idea that they are to be treated as words of contract or promise, rather than, as

they naturally import, as words indicating an immediate transfer of interest. The title transferred is a legal title, as distinguished from an equitable or inchoate interest." See also *Denny* v. *Dodson*, 32 Fed. Rep. 899; *Forrester* v. *Scott*, 92 Cal. 398, in which similar grants are construed in the same manner. And it was further held, in the case from which we have just quoted, that although the acts of Congress above referred to provide for the issuance of patents to the railroad company for the lands granted, upon the conditions therein named, that such patents are not needed to convey the legal title to such lands, and it was not contemplated by those acts that they should be issued for any such purpose. Upon this point the court said: " While not essential to transfer the legal right, the patents would be evidence that the grantee had complied with the conditions of the grant, and to that extent that the grant was relieved from possibility of forfeiture for breach of its conditions. They would serve to identify the lands as coterminous with the road completed; they would obviate the necessity of any other evidence of the grantee's right to the lands, and they would be evidence that the lands were subject to the disposal of the railroad company with the consent of the government. They would be thus, in the grantee's hands, deeds of further assurance of his title, and therefore a source of peace and quiet to him in his possession."

It necessarily follows from this view of the nature of the grant made to the Central Pacific Railroad Company by the acts of Congress, before mentioned, the position of appellant, that upon the completion of its railroad such company became only the equitable owner of the lands granted to it, and that the United States thereafter held the legal title to such lands in trust for it until the issuance of the patents provided for by said acts of Congress, cannot be sustained. The land owned by plaintiff is an odd-numbered section, and the legal title to it passed from the United States to the Central Pacific Railroad

Company when identified by a survey and the definite location of the line of its road. The title passed by the words of grant contained in the acts of Congress, and not by the patent subsequently issued to it.

When the legal title to land is granted by act of Congress, the title of the government is as effectively divested as it would be by the issuance of a patent therefor by the executive department, under authority of law, and such land then becomes subject to the limitation laws of the state in which it is situated; and an adverse possession thereof after the date of such grant for the requisite period fixed by such laws will ripen into a legal title in favor of the adverse possessor, and the effect of such possession is not interrupted or defeated by the subsequent issuance of a patent therefor, in pursuance of such act of Congress. (*Langdeau* v. *Hanes*, 21 Wall. 521; *Langlois* v. *Crawford*, 59 Mo. 456; *Peting* v. *De Lore*, 71 Mo. 13; *Ryan* v. *Carter*, 93 U. S. 78.)

The recitals contained in the patent under which plaintiff claims show that the line of the Central Pacific Railroad Company was definitely located prior to November 3, 1869, and that the company, on July 26, 1882, filed with the register and receiver at Sacramento a selection of plaintiff's land, under the acts of Congress before referred to, and that such selection was on that day properly certified to or approved by such register and receiver. These recitals are sufficient proof of the fact that the land was at the date of such selection surveyed by authority of the United States, and identified as land to which the grant made to that company had then attached, and that the costs of such survey, and other fees required by law, had been paid by such company. This being the case, it must be held, in accordance with the views contained in this opinion, that the legal title to such land was at that time vested in the Central Pacific Railroad Company, and the defendants, by their continued diversion of the waters of Wolf Creek thereafter, under claim of right, until the commencement of this action in 1889,

a period of more than five years, have acquired a prescriptive right to do so.

Judgment and order affirmed.

HARRISON, J., SHARPSTEIN, J., PATERSON, J., and GA-
ROUTTE, J., concurred.