## ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY v. CLEMENT OLSON.[1]

### July 11, 1902.

### Nos. 12,987—(167).

**Statute of Limitations.**

Whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right.

**Public Land—General Land Office.**

The law, in the absence of some specific provision to the contrary, commits, in the first instance, all matters affecting the disposition of public lands of the United States, and the adjustment of all private claims thereto, and grants therefor under congressional legislation, to the general land office, under the supervision of the secretary of the interior; and while such matters are pending and undetermined in such department the courts have no jurisdiction thereof.

**Land Grant—Adverse Possession under Homestead Entry.**

The plaintiff claimed title to the land here in controversy by virtue of its land grant. The defendant went into possession thereof, and made application to enter it as a homestead, which was denied, and by successive appeals he kept the matter in litigation in the land department for eleven years, when the contest was decided in favor of the plaintiff. *Held*, that the time during which the contest was thus pending is not to be counted against the plaintiff in determining whether the statute of limitations has barred its right to the land, and that the defendant has not established title thereto by adverse possession.

Action of ejectment in the district court for Otter Tail county. The case was tried before Baxter, J., who directed a verdict in

[1] Reported in 91 N. W. 294.

favor of defendant. From an order denying a motion for judgment notwithstanding the verdict but granting a motion for a new trial, defendant appealed. Affirmed.

*John Lind* and *A. Ueland,* for appellant.

*Thomas R. Benton,* for respondent.

START, C. J.

The plaintiff, on May 16, 1901, brought this action in the district court of the county of Otter Tail to recover from the defendant the possession of the east ½ of the northeast ¼ of section 17, township 131 north, range 43 west. The answer put in issue the plaintiff's alleged title, and set up title in the defendant by adverse possession. On the trial in the district court at the close of the evidence both parties asked for a directed verdict, and the court directed a verdict for the defendant. On the motion of the plaintiff for judgment notwithstanding the verdict or for a new trial, the court made its order granting a new trial, from which the defendant appealed.

The evidence and admissions given and made on the trial established these facts: The land here in question was embraced in the patent issued to the state of Minnesota by the United States on February 19, 1901, under the acts of congress granting land to the state to aid in the construction of the St. Vincent Extension of the St. Paul & Pacific Railway Company, and was embraced in the deed issued to the plaintiff by the governor of the state on behalf of the state on April 8, 1901. A map in due and proper form, and duly approved by the secretary of the interior, fixing the definite and permanent location of the railroad from East St. Cloud to St. Vincent, known as the St. Vincent Extension of the St. Paul & Pacific Railroad, was filed in the office of the commissioner of the general land office at Washington, on December 19, 1871, by the governor of the state of Minnesota. The land is within the primary or ten-mile limit of the grant made by the congress of the United States in aid of the construction of the railroad, as shown by the map fixing the definite location of the route of the railway. The entire extension was completed and equipped prior to January 1, 1880, and on January 9, 1880, the governor of the state of Minne-

sota certified to the secretary of the interior that the whole of the extension was completed and equipped as required by the several acts of congress and of the legislature of the state relating thereto, which certification the secretary of the interior accepted as satisfactory evidence of the construction and completion of the line of railway in accordance with the terms and requirements of the several acts of congress and of the legislature of the state. The defendant took actual possession of the land in 1880, and has ever since been in the open, exclusive, and continuous possession thereof. He took and held such possession believing and claiming that it was public land, subject to entry under the land laws, and that he had the right to be in possession, and had the right to acquire title from the United States. He was assessed and paid taxes on the improvements as "improvements on United States lands" every year after 1881. In September, 1887, he applied to the local United States land office to enter the land under the homestead act, but the application was rejected, and from this decision he appealed to the commissioner of the general land office. From the commissioner's decision, dated March 6, 1889, affirming the decision of the local land office, he appealed to the secretary of the interior, who affirmed the commissioner's decision on May 10, 1898. The cost of surveying the lands so granted to the plaintiff was not paid by it until December 26, 1900, and the cost of conveying them was not paid until February 15, 1901. The defendant here claims that, although the patent for the land was not issued until February 19, 1901, yet the plaintiff became the owner in fee thereof with the right of possession, so that it could have maintained ejectment therefor, when the map fixing the definite location of the railway was filed December 19, 1871, or, at all events, when the certificate of the completion thereof was filed, January 9, 1880, hence he now has title by adverse possession. On the other hand, the plaintiff's contention is to the effect that the defendant's possession of the land was not adverse, and the statute has not run, because: (1) The legal title remained in the United States until the patent was issued to the state, and, further, if this be not so, the legal title was in the state until April 8, 1901, when it executed a deed of the

land to the plaintiff; (2) the United States retained the legal title to secure the cost of surveying and conveying the lands; (3) the defendant took possession of the land in subordination to the admitted title of the United States, which he sought to obtain; (4) the running of the statute was suspended from 1887 until 1898, while the title to the land was in litigation before the land department of the United States, and the courts had no jurisdiction of the matter while it was pending and undetermined in the land department. The trial court sustained this last contention of the plaintiff, and on that ground, and no other, granted a new trial.

The mere fact that the defendant took possession of the land believing that the title thereto was in the United States, and intending by his possession to secure it by virtue of a homestead entry, would not prevent his possession from being adverse as against the plaintiff within the legal meaning of the term. Northern Pac. Ry. Co. v. Townsend, 84 Minn. 152, 86 N. W. 1007. And we assume, for the purposes of this appeal only, that the plaintiff, by virtue of the congressional land grant, the completion of its railway, and the filing of the certificate of that fact, acquired such a title to the land in question that it could at all times thereafter have maintained an action to recover the possession thereof, unless the litigation and proceedings in the land department operated to suspend its right to maintain such an action; and we come directly to the consideration of the question of the effect of such proceedings on the respective rights of the parties hereto.

Whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitation has barred his right, even though the statute makes no specific exception in his favor in such cases. Braun v. Sauerwein, 10 Wall. 218; 19 Am. & Eng. Enc. (2d Ed.) 216. It is also well settled that the courts have no right to invade the functions confided by law to other departments of the government, and interfere with the discharge of their duties in matters exclusively intrusted to their determination, so long as such matters are pending and undetermined.

The law, in the absence of some specific provision to the contrary in particular grants, commits in the first instance, within the meaning of this rule, all matters affecting the disposition of public lands of the United States, and the adjustment of all private claims thereto and grants thereof under the legislation of congress, to the general land office, under the supervision of the secretary of the interior. Winona & St. Peter Land Co. v. Ebilcisor, 52 Minn. 312, 54 N. W. 91; McHenry v. Nygaard, 72 Minn. 2, 74 N. W. 1106; Johnson v. Towsley, 13 Wall. 72; Marquez v. Frisbie, 101 U. S. 473; Barden v. Northern Pac. Ry. Co., 154 U. S. 288, 14 Sup. Ct. 1030; Catholic Bishop v. Gibbon, 158 U. S. 155, 15 Sup. Ct. 779.

Now, it appears from the admitted facts in this case that the questions arising upon the defendant's application to enter the land as a homestead, and upon a claim of the Northern Pacific Railroad Company that it was entitled to the land by virtue of its grant, were pending and undetermined in the land department from 1887 to 1898, and, if it had jurisdiction to hear and determine them, it necessarily follows that during that time the courts were without right to hear and determine the questions, and that such time is not to be counted against the plaintiff in determining whether the statute of limitations has barred its right to its land. The defendant, however, claims that the land department had no jurisdiction to hear and determine any questions as to the title of the land, because when the defendant initiated his contest therein upon his claim that the land was public land, and subject to his proposed homestead entry, the title had in fact already passed from the United States to the plaintiff by virtue of the land grant in question; that such grant was one in præsenti; that the filing of the map of definite location was the source as well as the evidence of plaintiff's title, and that it then became complete, and the issuing of a patent for the land thereafter would be in the nature of a conveyance for further assurance, but in no sense essential to the legal title already vested; that, if the department had patented the land to the defendant on his contest and homestead claim, the courts would have held the patent void.

It is true that, if the department had made a mistake of law, whereby the patent for the land was issued to the defendant when, as a matter of law, the plaintiff was entitled to it, a court of equity would declare the defendant a trustee of the legal title for the benefit of the plaintiff. Roy v. Duluth & I. R. Ry. Co., 69 Minn. 547, 72 N. W. 794, 173 U. S. 587, 19 Sup. Ct. 549. But it will not do to reason backwards, and conclude that the land department had no jurisdiction to determine the questions because it correctly decided them, from which it now appears that the plaintiff was entitled to the land before the defendant initiated the contest. The land grant and the filing of the map of definite location did not necessarily vest in the plaintiff a right to all the odd-numbered sections within the place limits, for there was expressly excepted from the grant all land which had been sold, reserved, or otherwise appropriated, or to which the right of pre-emption had attached at the time the line of road was definitely located. Whether the land here in controversy fell within the grant or the exception thereto was a mixed question of law and fact, which it was the duty of the land department to hear and determine when proceedings were instituted by the defendant to establish his right to enter it as a homestead; also when the Northern Pacific Company claimed it by virtue of its grant. Clearly, the department had jurisdiction in the premises, although the facts, when ascertained, demonstrated that the land was within the plaintiff's grant.

If there was any fair doubt as to the correctness of this conclusion, the doubt ought to be resolved against the defendant, for the claim he here makes is inequitable. He asserted by his homestead application that the land was public land, and within the jurisdiction of the land department, which he invoked; and by successive appeals he thereby compelled the plaintiff to litigate in the land department, with him, his claim, for eleven years. We therefore hold that the time during which the question of the title to the land was pending and undetermined in the land department cannot be counted against the plaintiff in determining whether the statute of limitation has barred its right to recover its land,

and that the defendant did not establish title thereto by adverse possession.

Order affirmed.

BROWN, J. (dissenting).

It seems to me the majority give entirely too much effect to the proceedings in the government land department on defendant's application to make homestead entry of the land in question. Such proceedings were not brought to determine plaintiff's title, —its title had already vested,—but to determine the asserted homestead right of defendant. Under what statute or principle of law does such a proceeding suspend the running of the statute of limitations as to plaintiff's right to bring ejectment for the land, to which the majority must concede it had title? Suppose the maker of a promissory note should bring an action to cancel the same for fraud, or to recover possession thereof on the ground that it was never delivered, would the pendency of such an action suspend the holder's right of action on the note? Clearly not. Notwithstanding such an action were brought, the statute of limitations would continue to run against the owner of the note, and his right of action would be barred after the lapse of the statutory period of six years. Yet this decision establishes a rule to the contrary. I am unable to concur in that view of the law.