RUSSELL SAGE v. MICHAEL RUDNICK.[1]

Nos. 13,727—(184).

January 22, 1904.

**Land Grant—Adverse Possession.**

*Held,* following St. Paul, M. & M. Ry. Co. v. Olson, 87 Minn. 117, that the time during which the right of the plaintiff's grantor to the land here in question under its land grant was in litigation in the Land Department of the federal government cannot be counted against him in determining whether his right to recover the land is barred by adverse possession.

After Reargument.

June 17, 1904.

**Conflicting Land Grants.**

In 1866 Congress granted to the state of Minnesota, in aid of the construction of a railroad therein, certain lands consisting of the odd-numbered sections within ten miles on either side of the center line of the

[1] Reported in 98 N. W. 89; 100 N. W. 106.

road when definitely located. The state, by Sp. Laws 1867, p. 11 (c. 9), accepted the grant, and in turn granted the lands to the railroad company upon certain conditions named in the act. The Hastings & Dakota Railroad Company, the grantee and beneficiary, filed its map of definite location in June, 1867, fully complied with the conditions of the grant, completed its road in 1880, and the land was formally conveyed by the state to plaintiff, the successor of the railroad company, in 1891. Defendant settled upon the land in controversy in this action, the same being a part of that so granted to the railroad company, and within the place limits of its grant, in 1877, and has ever since continuously remained in the open, adverse, and exclusive possession of the same. Subsequent to filing the map of definite location by the Hastings & Dakota Company and the completion of its road, the St. Paul, Minneapolis & Manitoba Railroad Company made claim to this and other lands within the primary limits of the grant to the Hastings & Dakota Company, which claim it presented to the Interior Department of the general government for adjudication, where it was pending and undetermined from 1883 to 1891, when it was disposed of adversely to the Manitoba Company. In this action by plaintiff, successor to all the rights of the Hastings & Dakota Company, to recover possession of the land from defendant, it is *held:*

**Legal Title.**

1. That the grant to the railroad company was in præsenti, and the legal title to the land in question passed to the Hastings & Dakota Railroad Company upon the filing of its map of definite location in 1867.

**Statute of Limitations.**

2. The statute of limitations began to run in favor of defendant's alleged title by adverse possession at the time of his settlement upon the land, the legal title thereto being then in the railroad company.

**Litigation before Interior Department.**

3. After the title so passed from the government to the railroad company, the Interior Department had no jurisdiction to hear or determine the asserted claim of the Manitoba Company, and the pendency of that controversy before the department did not suspend the running of the statute of limitations in favor of defendant's adverse claim.

**Jurisdiction of General Land Office.**

4. When the legal title to public land has passed from the government, the Interior Department has no jurisdiction to determine controversies between individual claimants concerning the title or right to the possession thereof.

**St. Paul v. Olson Distinguished.**

5. St. Paul, Minneapolis & Manitoba Ry. Co. v. Olson, 87 Minn. 117, distinguished.

Action of ejectment in the district court for Swift county. The case was tried before Qvale, J., who directed a verdict in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Reversed on rehearing.

*C. A. Fosnes,* for appellant.

*Owen Morris,* for respondent.

START, C. J.

This is an action of ejectment, begun in March, 1896, to recover the possession of a quarter section of land in the county of Swift, and within the primary limits of the grant of lands to the Hastings & Dakota Railway Company, and the indemnity limits of the St. Paul, Minneapolis & Manitoba Railway Company's grant. The plaintiff is the successor in interest of the Hastings & Dakota Company. The sole defense was adverse possession, which the defendant claimed began May 15, 1877. The evidence was undisputed that from May, 1883, until October 23, 1891, the land was in litigation between the Hastings & Dakota Company and the St. Paul, Minneapolis & Manitoba Railway Company in the General Land Office of the United States, each company claiming that it was entitled to the land by virtue of its grant; that the Secretary of the Interior on October 23, 1891, decided the contest in favor of the Hastings & Dakota Company; and further that the land was certified to the state April 16, 1892, and on April 22, 1892, it was conveyed to the plaintiff. Upon these facts, and the admission of the defendant that his sole claim to the land rested upon his alleged title by adverse possession, the trial court directed a verdict for the plaintiff. The defendant appealed from an order denying his motion for a new trial.

The question raised by the record is whether the plaintiff or his predecessor in interest could have maintained an action to recover possession of the land while the question as to which company was entitled to it was so in litigation in the land office. If he could not, then the trial court rightly directed a verdict for the plaintiff. The question must be, and is, determined adversely to the defendant, on the authority of the case of St. Paul, M. & M. Ry. Co. v. Olson, 87 Minn. 117, 91 N. W. 294. It is, however, claimed by the defendant that the facts in the case cited distinguish it from the one now under consideration,

in that in the Olson case the litigation in the land office was initiated and continued by the defendant, while in this case the defendant was not a party in any manner to the contest in the land office. We are of the opinion that such fact does not, in principle, distinguish the cases. In each case the question whether the land passed by the grant was in litigation in the General Land Office, which had in the first instance paramount authority to determine the question; and, so long as the question was still pending and undecided, the courts had no jurisdiction to decide the question. What was said in the opinion in the Olson case in reference to the fact that the defendant initiated the litigation was for the purpose of emphasizing the inequity of his claim; hence any fair doubt as to the correctness of the conclusion reached as to the effect of the pendency of the litigation in the Land Department ought to be resolved against him.

Order affirmed.

LOVELY and BROWN, JJ. (dissenting).

We dissent. The case is clearly distinguishable from the Olson case. In that case Olson, the settler, initiated proceedings in the Land Department, and sought in that tribunal to have his alleged right to the land determined; and the court held that it would be inequitable to permit him, after keeping that controversy alive and in the department for a number of years, and after being defeated, to turn around and be heard to assert a title by adverse possession acquired in whole or in part during that period. In the case at bar, defendant, the settler, did not commence or take any part in the proceedings in the Land Department instituted for the purpose of determining the rights of the contending railway companies, and was in no way responsible for that controversy, or for the length of time it continued in the department undetermined. The rule in the Olson case has therefore no application, and should not be extended to a case like that at bar.

The land involved in this action was a part of that granted by the general government to the Hastings & Dakota Railway Company to aid in the construction of its railroad, the title to which passed from the government to the company upon the filing of its map of definite location. Schulenberg v. Harriman, 21 Wall. 44; Leavenworth, L. & G. R. Co. v. U. S., 92 U. S. 733; Railroad Co. v. Baldwin, 103 U. S.

426; St. Paul, M. & M. Ry. Co. v. Phelps, 137 U. S. 528, 11 Sup. Ct. 168. It was a grant in præsenti, and the issuance of a patent or deed from the state was not essential to the vestiture of title in the railway company. Langdeau v. Hanes, 21 Wall. 521; Wright v. Roseberry, 121 U. S. 488, 7 Sup. Ct. 985; Weeks v. Bridgman, 41 Minn. 352, 43 N. W. 81. The map of definite location of the Hastings & Dakota Railway Company was filed on June 26, 1867, and since that time the company, or plaintiff, its grantee, has been the owner of the legal title to all place lands embraced within the act, including that involved in this case, and had the undoubted right to maintain an action in ejectment, or any other form of action, to determine the title, against any person claiming it. McHenry v. Nygaard, 72 Minn. 2, 74 N. W. 1106; Denny v. Dodson (C. C.) 32 Fed. 899; Curtner v. U. S., 149 U. S. 662, 13 Sup. Ct. 1041; Deseret Salt Co. v. Tarpey, 142 U. S. 241, 12 Sup. Ct. 158.

The mere fact that another railway company laid claim to the land in no way involved its legal title, or prevented the Hastings & Dakota Company from maintaining an action to recover it. It is true that courts will not assume jurisdiction over lands belonging to the general government where it appears that the title is in dispute between rival claimants, and the controversy concerning it is pending and undetermined in the government Land Department. But that rule applies only to cases where the title to the land is still in the United States, and there are controverted questions of fact, and not to cases where the government has parted with its title, and the legal rights of the parties are fixed and certain. Roy v. Duluth & I. R. R. Co., 69 Minn. 547, 72 N. W. 794. If the Hastings & Dakota Company had brought an action in ejectment against this defendant to recover the possession of this land pending the controversy said to have existed between that company and the other railway company, no court would have held that an answer by the defendant setting up that a controversy existed between the two railroads as to the ownership of the land would have been a defense to the action. That the land in question was a part of the land grant of the Hastings & Dakota Company, within the place limits of that grant, and passed to that company on the filing of its map of definite location, there is not, and never has been, any question; and it must necessarily follow that the Land Department of the general gov-

ernment did not have exclusive or paramount jurisdiction to determine the legal rights of the contending railway companies, there being, as already stated, no controversy about the facts.

Of course, if the land in question had been a part of the indemnity tract, the title to which does not pass from the government until properly selected. by the railway company entitled to it, and is certified to the company by the Land Department in lieu of lands lost in the place limits, a different question would be presented. But the land here in question was within the place limits, and passed to the company at the time of filing its map of definite location; and it was beyond the power of the Land Department, or Congress itself, to reclaim the title and transfer it to some other company. It follows, therefore, that the legal rights of the Hastings & Dakota Company were fixed and certain, and it could at any time after the map of definite location had been filed have maintained an action in the courts to protect them.

On June 17, 1904, the following opinion was filed:

BROWN, J.

Action in ejectment, in which defendant interposed the defense of title by adverse possession. The trial court instructed a verdict for plaintiff, and defendant appealed from an order denying a new trial. The appeal came on for hearing and was decided at the October, 1903, general term, and is now before us on rehearing.

The only question presented on the former hearing was whether the defendant should have been permitted to prove, in support of his defense, that he had been in the actual, open, and exclusive possession of the land under claim of right for fifteen years next preceding the commencement of the action. It was then held that the case was controlled by St. Paul, M. & M. Ry. Co. v. Olson, 87 Minn. 117, 91 N. W. 294, and the ruling of the learned trial court, holding that the defendant's claim of title, on the conceded facts, was invalid, was sustained. An application for rehearing having been granted, the cause was again argued and submitted upon the same question at the present term of court.

The facts are as follows: In 1866 the Congress of the United States, by act approved on July 4 of that year (14 Stat. 87, c. 168), granted to the state of Minnesota, to aid in the construction of a railroad from

Hastings to the western boundary of the state, certain lands consisting of the odd-numbered sections within a belt ten miles in width on each side of the line of the railroad when definitely located. The grant was accepted by the state of Minnesota on March 7, 1867, by Sp. Laws 1867, p. 11 (c. 9), by which act the state in turn granted the lands to the Hastings & Dakota Railroad Company. Subsequent to the act of acceptance and grant to the railroad company, the latter, on June 26, 1867, filed its map of definite location, and thereafter fully complied with the conditions of the grant and completed its road about the year 1880—the precise date is not before us. Plaintiff in this action succeeded to all the rights of the railroad company, and the land was formally certified to him by the state in 1891. The land in controversy in this action was a part of that so granted to the railroad company, and within the place limits of that grant. Defendant entered into possession of the same under claim of right in 1877, and the evidence offered by him on the trial tends to show that since that time he has remained in the actual, open, notorious, and exclusive possession thereof. This action was brought against him in 1896 to recover possession of the land, and it is the claim of plaintiff that the statute of limitations did not begin to run in defendant's favor on his alleged claim of adverse possession until the land was, formally certified to the railroad company by the state in 1891. The trial court, basing its decision upon the Olson case, supra, sustained this contention, and the only question now before us is whether the court in so ruling erred.

The act of Congress by which this land was granted to the railroad company is similar to those of other grants of a like nature, and operated to pass the title to the land from the government at the time the company filed its map of definite location. This question has been repeatedly before the Supreme Court of the United States in similar cases, and the decisions are uniform that such grants are in præsenti, and pass the title upon filing the map of definite location of the road. Schulenberg v. Harriman, 21 Wall. 44; Leavenworth Ry. Co. v. U. S., 92 U. S. 733; Railroad Co. v. Baldwin, 103 U. S. 426; Railway Co. v. Phelps, 137 U. S. 528, 11 Sup. Ct. 168. It is unnecessary, so far as passing title is concerned, that a patent or formal certificate of the Interior Department be issued. Langdeau v. Hanes, 21 Wall. 521; Wright v. Roseberry, 121 U. S. 488, 7 Sup. Ct. 985; Weeks v. Bridgman, 41 Minn.

352, 43 N. W. 81. The legal title having passed by the act of Congress, and by the act of the legislature of Minnesota of March 7, 1867, which expressly granted to the railroad company all lands and interest therein conferred upon the state by the act of Congress, the railroad company and its successor, plaintiff in this action, from the time of filing the map of definite location in June, 1867, had the undoubted right to maintain an action to recover the land from any person claiming any right or interest therein. The courts were open to them, and any form of action could have been maintained therein to protect their rights.

This precise question has been before many of the courts of our sister states, and the decisions are uniform to the effect that in land grants of this kind the statute of limitations commences to run in favor of an adverse claimant from the time of filing by the railroad company of its map of definite location, where, as in the case at bar, the grant is one in præsenti.

In the case of Southern Pac. Ry. Co. v. Whitaker, 109 Cal. 268, 41 Pac. 1083, the court had before it the rights acquired by a railroad company under a land grant similar to that involved in the case before us. It was held that the railroad company became the owner of the lands there in controversy on filing its map of definite location, that the statute of limitations commenced to run in favor of defendant, an adverse claimant, from that date, and that the effect of the adverse possession was not interrupted or defeated by the subsequent issuance of a patent to the company in pursuance of the grant; and title to the land was awarded defendant notwithstanding the fact that a controversy existed between the parties concerning the title, and was pending in the Land Department during a part of the time the statute was claimed to be running in defendant's favor.

In Jatunn v. Smith, 95 Cal. 154, 30 Pac. 200, the land claimed by plaintiff was granted to the Southern Pacific Railway Company by act of Congress of July 1, 1862 (12 Stat. 489, c. 120.) Patent was not, however, issued to the railroad company until 1884, but it was held that the statute of limitations began to run against the company and in favor of the adverse claimant, not from the date of the issue of the patent, but from the date of the grant by Congress.

In Chicago, Rock Island & Pac. Ry. Co. v. Allfree, 64 Iowa, 500, 20 N. W. 779, it appeared that defendant took possession of the land in

controversy under a tax deed, void because the title was in the United States. Plaintiff railroad company thereafter procured title from the government, but defendant continued in uninterrupted possession under his tax deed for more than ten years thereafter. It was held that the railroad company's right was barred by the statute of limitations; that the statute began to run against the company at the date of its title from the government.

In the case of Alabama State Land Co. v. Kyle, 99 Ala. 474, 13 South. 43, it appeared that the land in controversy in that action was embraced in a grant to the state of Alabama by act of Congress, to aid in the construction of a railroad, and defendant in the action claimed title by adverse possession. It was held that the statute of limitations began to run in his favor at the time the legal title passed from the state to the railroad company.

In the case of Railroad Co. v. Lilly, 6 Mont. 65, 9 Pac. 116, it was held that an action in ejectment could be maintained against a person in possession of the land covered by the grant to a railroad company after the filing of the map of definite location. Other cases in line with these may be found cited in 26 Am. & Eng. Ency. (2d Ed.) 325.

Some time after the map of definite location had been filed by the Hastings & Dakota Company and the completion of its road, the St. Paul, Minneapolis & Manitoba Railway Company claimed that the land in question, and other lands within the place limits of the grant to the Hastings & Dakota Company, were within the indemnity limits of that company, and that it was entitled to the land. This claim was presented to the Interior Department for adjudication, and it is claimed by plaintiff that the statute of limitations was suspended during the pendency of that controversy, which was finally determined in favor of the Hastings & Dakota Company in 1891. We here reach the feature of the case upon which we are not agreed. The minority of the court concur with plaintiff, but a majority find no merit in the contention.

The claim of the Manitoba Company was wholly without foundation. The legal title to the land passed to the Hastings & Dakota Company at the time it filed its map of definite location, and long before the Manitoba Company had even made its claim to indemnity lands. But, granting that it had a meritorious claim, it could not be heard or determined

by the Interior Department. The authorities all hold, and it is thoroughly settled, that, when land has passed from the general government, controversies between individuals concerning title thereto are exclusively within the jurisdiction of the courts. The executive department of the government has not only no power or authority over, but no jurisdiction to entertain, a proceeding involving such controversies. 26 Am. & Eng. Ency. (2d Ed.) 383, and cases cited.

In the case of Stone v. United States, 2 Wall. 525, it appeared that a patent had been erroneously issued, as the land covered thereby had been reserved from sale, and on a hearing before him the patent was held void by the Secretary of the Interior, and revoked. The Supreme Court of the United States held that his act in doing so was unauthorized, beyond his power, and within the jurisdiction of the courts only. In Warren v. Van Brunt, 19 Wall. 646, it was held that the issuance of a patent by the government passes the legal title to the patentee, and controversies respecting the rights of individual claimants to the land are not within the jurisdiction of the Land Department. In Moore v. Robbins, 96 U. S. 530, the Secretary of the Interior attempted to recall a patent after it had been issued, and it was held that he had no jurisdiction to do so. The same principle is laid down in United States v. Schurz, 102 U. S. 378, and in Bicknell v. Comstock, 113 U. S. 149, 5 Sup. Ct. 399. In Iron Silver Mining Co. v. Campbell, 135 U. S. 286, 10 Sup. Ct. 765, patents had been issued to different persons for the same tract of land, and it was held that the officers of the Land Department had no further control over the matter, but that the rights of the contending parties must be presented to the courts for adjudication. These were cases where patents had been issued under the homestead or pre-emption laws, but the principle established by them applies equally to all cases where the legal title has passed from the government, whether by grant to a railway company to aid in the construction of its road or otherwise. In either case the title no longer remains in the government, and its executive department has no control over controversies respecting it. Brown v. Hitchcock, 173 U. S. 473, 19 Sup. Ct. 485; State v. Bachelder, 5 Minn. 178 (223).

It follows, therefore, that the claim of the Manitoba Company to the lands in controversy and other lands, though pending and undetermined in the Interior Department of the government during a portion

of the time covered by defendant's alleged adverse possession, did not suspend the running of the statute of limitations. If the Interior Department had jurisdiction of that controversy, and paramount authority to determine it, the contention of plaintiff would be sound, but, for the reasons stated, and within the authorities cited, the Interior Department had no jurisdiction of the controversy, paramount or otherwise, and its pendency in the department was of no effect. The government itself had no power, having divested itself of the title by the grant to the state, to recall the title, and vest it in the Manitoba Company, however valid its claim may have been. 26 Am. & Eng. Ency. (2d Ed.) 349, and cases cited in note 9.

For the reasons stated in the dissenting opinion on the former hearing, the case of St. Paul, Minneapolis & Manitoba Ry. Co. v. Olson, 87 Minn. 117, 91 N. W. 294, is clearly distinguishable, and not in point.

Our conclusions are that the former decision must be, and it is, overruled, the order appealed from reversed, and the cause remanded to the court below for a new trial.

START, C. J., and LEWIS, J. (dissenting).

We dissent. We are unable to distinguish this case from the case of St. Paul, Minneapolis & Manitoba Ry. Co. v. Olson, 87 Minn. 117, 91 N. W. 294.