STATE EX REL. BROWN LAND COM'R, v. SCOTTISH AMERICAN MORTGAGE CO.

[71 South. 291.]

1. CORPORATIONS. *Foreign corporations. Right to sue. Comity. Aliens. Disabilities. Holding real property. Statute. Purchase to protect lien.*

The law of comity in its application to the question of the right of a corporation to act in another state or county is that a

corporation created by the laws of one state or county is per-
mitted to do business in another state or country, and sue in
its courts, unless expressly prohibited by statute, or the cor-
poration is contrary to the public policy of the state, the law
of comity is a part of the common law and the courts give
it the effect that they give to any other rule of the common law.

2. ALIENS. *Disabilities. Holding real property. Statute.*

Under Code 1906, section 2768, prohibiting non-resident aliens from
holding land, but providing that they might take a lien on
land to secure a debt and under sale to enforce the payment of
the debt, might purchase the land and hold it not longer than
twenty years, with full power, to sell it in fee to a citizen or
to retain it by becoming a citizen within that time, where the
state filed a suit to escheat the title of a foreign corporation
to land bought by it at a sale under a deed of trust given it to
secure a loan before the expiration of the twenty-year period
during which the corporation could hold the land and filed a no-
tice of *lis pendens* which practically prevented any sale thereof,
the time during which such suit was pending, not only prior
to the decision in the court below in favor of the corporation,
but also pending an appeal by the state, should not be counted
as a part of this twenty-year period the corporation could hold
the land.

3. ALIENS. *Disabilities. Holding real property. Statutes.*

There should also be excluded from such period the time during
which the land was in the possession of a resident under a con-
tract of purchase, which contract was subsequently rescinded
because of a defect in the title, since during that time, the gen-
eral purpose of the statute to invest ownership in residents of
the state was being accomplished.

4. ALIENS. *Disabilities. Holding land. Purchase to protect lien.*

Where a foreign corporation, which had purchased land at a sale
under a trust deed securing a debt to it, contracted to sell it
to residents of this state, and afterwards, because of a defect
in the title, agreed to rescind the sale and repay the purchase
price, it did not by such repayment, become a purchaser at a
sale to enforce the payment of debt as provided in section 2768,
Code 1906, and was not authorized to hold the land for twenty
years thereafter, since after the rescission, it merely held the
title originally acquired by it, and the statute only contem-
plated an involuntary sale at which the alien only buys as a
last resort to protect his lien.

APPEAL from the chancery court of Franklin county. HON. R. W. CUTRER; Chancellor.

Suit by the state on the relation of McA. Brown, as land commissioner, against the Scottish American Mortgage Company Limited, to escheat certain lands held by defendant. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Theo. McKnight,* for appellant.

*Caruthers Ewing* and *Wilson & Armstrong,* for appellee.

STEVENS, J., delivered the opinion of the court.

This action was instituted by the state of Mississippi on the relation of its land commissioner, to escheat certain lands purchased by appellee at a sale foreclosing a mortgage or deed of trust held by appellee against one Nathan Bunckley. The suit was brought April 29, 1913, and is based on the ground that appellee is a nonresident alien. The bill alleges that appellee is a nonresident alien corporation; that said corporation, April 26, 1888, loaned Nathan Bunckley five thousand dollars, and to secure the payment of same, took a deed of trust on the lands in dispute, with one Albert S. Caldwell as trustee; that thereafter, one Roscoe Stinson was appointed substituted trustee, and, acting under his appointment, the substituted trustee, on December 30, 1892, sold the lands embraced in the deed of trust, at public auction, in accordance with the terms of the mortgage; at which sale appellee appeared and bid in the lands to protect its lien, and obtained a conveyance therefor from the substituted trustee; that appellee entered into possession of the lands January 6, 1893, charged with the duty of conveying, and has not conveyed, the particular lands involved in this suit, to a citizen of this state within twenty years, as provided by

section 2439, Code 1892, and section 2768, Code 1906. This section of the Code reads as follows:

"Resident aliens may acquire and hold land, and may dispose of it and transmit it by descent, as citizens of the state may; but non-resident aliens shall not hereafter acquire or hold land, although a non-resident alien may have or take a lien on land to secure a debt, and at any sale thereof to enforce payment of the debt, may purchase the same, and thereafter hold it, not longer than twenty years, with full power during said time to sell the same in fee to a citizen; or he may retain it by becoming a citizen within that time. All land held or acquired contrary to this section shall escheat to the state; but a title to real estate in the name of a citizen of the United States, or a person who has declared his intention of becoming a citizen, whether resident or non-resident, if he be a *bona fide* purchaser or holder, shall not be forfeited or escheated by reason of the alienage of any former owner or other person."

It appears that one John M. Judah, attorney in fact for appellee, undertook to appoint the substituted trustee, and also that Mr. Judah actually bid in the land at the trustee's sale and received, himself, a deed therefor, but that this conveyance was made to him for the mortgage company; that John M. Judah, in March, 1894, conveyed by special warranty deed the lands in question to Henry I. Sheldon, who, in May following, executed a declaration of trust in the lands in favor of appellee. In other words, it is conceded that although the title came through Judah and Sheldon, that appellee was the real claimant and owner of the lands in September, 1895, when Henry I. Sheldon conveyed the lands to Paul L., Lizzie C., and E. Fisher Jones. This conveyance was partly in consideration of a conveyance to the said Henry I. Sheldon by the Joneses of a house and lot in Memphis, Tenn., and in the consummation of this trade, appellee took twenty promissory notes, payable annually from January 1, 1897, and secured by deed of trust on the lands convey-

ed.   After Paul L., Lizzie C., and E. Fisher Jones pur-
chased these lands, they detected what appeared to them
to be a serious defect in the title, made complaint to
the officers of appellee about this alleged defect, and re-
fused to pay the first note executed by them as a part of
the purchase price; and after considerable correspon-
dence between them and the representatives of appellee,
rescinded their contract of purchase, reconveyed the lands
to appellee, and had delivered up to them their notes and
trust deed.   This contract of rescission bears date of
February 16, 1897.   On April 28, 1911, the state filed a
bill of complaint to escheat these lands, and caused to be
filed a regular *lis pendens* notice.   This first bill, however,
was dismissed on the 28th of April, 1913; and on the next
day, April 29th, the bill of complaint in the present cause
was filed.   The mortgage which appellee took upon the
lands contained a provision for a sale by trustee, and with
this express agreement:

". . . And at such sale, any of the parties hereto
may become purchasers."

At the time the original deed of trust was executed,
section 1230, Code 1880, was in force, and expressly pro-
vided that:

"Aliens may acquire and hold land in this state, and
may dispose of it, and transmit it by descent, in the same
manner as citizens  .  .  . may do."

Appellee has been so unfortunate as to be involved in
a series of litigations in reference to these lands, as re-
flected by the following cases:  *Bunckley* v. *Jones,* 79
Miss. 1, 29 So. 1000; *Mortgage Co.* v. *Bunckley,* 81 Miss.
599, 33 So. 416; *Mortgage Co.* v. *Bunckley,* 88 Miss. 642,
41 So. 502, 117 Am. St. Rep. 763; *Mortgage Co.* v. *Butler*
99 Miss. 56, 54 So. 666, Ann. Cas. 1913C, 1236; *Bunckley* v.
*Mortgage Co.* (Circuit Court of Appeals, Fifth Circuit)
185 Fed. 783, 107 C. C. A. 653.

The result of this litigation, generally speaking, was
the holding that one Albert Bunckley was entitled to a
one-fourth interest in a large portion of the lands; and

that the appointment of the substituted trustee was void because made by an attorney in fact, when there was no provision in the trust deed authorizing it. ' It appears that appellee has been adjudged to have acquired a good title, however, by adverse possession.

The answer submits to the court the defense, that, at the time the mortgage was executed, appellee had the right to purchase and hold the lands in fee forever; that while enjoying such right it entered into the contract with Nathan Bunckley in good faith, and, as a part of its contract, had the vested right to purchase the lands at foreclosure sale. It is next contended that if the mortgage company cannot claim as a purchaser at the original trustee's sale, that it, as a nonresident alien, took a lien on the lands to secure two thousand dollars which the Joneses agreed to pay appellee as a part of the purchase price of the lands, as evidenced by the deed of trust executed by the Joneses, and that the contract of rescission of February 1897, constituted a purchase by appellee at a sale to enforce payment of the Joneses' debt; and that under the provisions of the Code, appellee has a right to hold the land for twenty years from and after February 16, 1897. In other words, it is contended that the mortgage company held a valid and subsisting lien against the Joneses, taken in accordance with the provisions of law, and that instead of having the trustee sell the land to enforce payment, appellee simply purchased at a private sale, and took a reconveyance, at a time when the Joneses were in default, and as full settlement and satisfaction of the lien lawfully held at that time. It is contended, further, that whether the deed is to be regarded as a purchase in fee forever, or whether it took the lands impressed with the duty of selling or disposing of them under the statute, that it has not yet enjoyed the full right and power to sell, because the state, by its bill of complaint exhibited April 28, 1911, restrained and prevented appellee from consummating the sale of any portion of the land; that the filing of this bill and the *lis*

*pendens* notice accompanying the same effectually warned the public that appellee had no title which it could convey, and that the state was claiming the absolute right to escheat. The defendant insists that all time subsequent to April 28, 1911, should not be counted against it.

The chancellor held that the mortgage company took a valid lien on the land to secure a debt due it by the Joneses, that the Joneses were in default for this debt in February, 1897, and that the reconveyance by the Joneses to appellee was a sale to enforce the payment of this debt, and that, therefore, under the terms of the statute, appellee had a right to hold the land twenty years from February 16, 1897, with full power during said time to sell in fee to a citizen or citizens of this state, and that the bill of complaint in this cause was filed prematurely.

As remarked by counsel for appellee, "it was a bad day for the Scot" when the original loan reflected by the record of this case was granted Nathan. Bunckley. The question whether appellee, as a nonresident alien corporation, had the right to purchase the lands involved in this suit at foreclosure sale and to acquire title in this state by adverse possession, is answered in the affirmative by the learned opinion of our court, speaking through Judge Anderson, in the case of *Mortgage Co.* v. *Butler,* *supra.* The same conclusion was reached by the circuit court of appeals of the fifth circuit in another branch of litigation over the same lands, as disclosed by the opinion in the case of *Bunckley et al.* v. *Scottish American Mortgage Co., Ltd., supra.*

In the disposition of the appeal in the instant case, it is unnecessary for us to answer the contention of counsel for appellant that a corporation, organized under the laws of a foreign country, has no right to acquire and hold lands in fee forever in Mississippi. It appears that under the express provisions of the Code of 1880, aliens could acquire and hold land, and transmit it by descent, in the same manner and to the same extent that citizens

might. When this statute was in force and effect, appellee, in good faith, made a loan of five thousand dollars to Nathan Bunckley and took a contract expressly providing that the beneficiary might purchase the land at any foreclosure sale. Before there was a foreclosure, however, the Code of 1892 was effective, making a distinction between resident and nonresident aliens, and limiting the right of nonresident aliens to that of merely taking a lien on land to secure a debt, and that in a sale to enforce payment of the debt, to purchase and thereafter hold the lands not longer than twenty years, with full power during said time to sell in fee to a citizen. In adopting the Code of 1892, it is expressly provided by section 4 that the repeal of any statutory provisions shall not affect "any right accruing or accrued or established." The argument is persuasive, therefore, that appellee, in entering into the contract with Nathan Bunckley, under the Code of 1880, had a vested right to buy in the lands in fee simple for the protection of its lien, and that having been forced to purchase at the foreclosure sale, is the absolute owner of the property so purchased.

We fail to see how the fact that appellee is an alien corporation in any way alters the case.

"The law of comity in its aplication to the question of the right of a corporation to act in another state or country is that a corporation created by the laws of one state or country is permitted to do business in another state or country and sue in its courts, unless expressly prohibited by statute, or the recognition of the corporation is contrary to the public policy of the state. The law of comity is a part of the common law and the courts give it the effect that they give to any other rule of the common law." Thompson on Corporations (5th Ed.) vol. 3, par. 6626.

The corporation could not enter this state and do business contrary to the express provisions of our statute, or contrary to the public policy of our state; this, we understand, it did not undertake to do. The right of a foreign

corporation to enter into contracts in a foreign state or country, and to seek the protection of the courts in reference to such contracts, is discussed in an exhaustive way and upheld by the supreme court of the United States in the case of *Bank of Augusta* v. *Earle,* 13 Peters, 519, 10 L. Ed. 274. But so far as the right of appellee originally to enter into the mortgage contract is concerned, there is no attack by counsel for appellant in the present case; its right to enter into this contract, and to sue in the courts of our state to protect its right has already been recognized; and, more than this, appellee has been accorded the right of pleading title conferred on it by adverse possession. The answer to the question whether this title thus acquired is in fee forever or should be held no longer than twenty years under our statute, may for the present be deferred. It was expressly held by Knowles, District Judge, in the case of *Black* v. *Caldwell* (C. C.), 83 Fed. 880, in reference to a like question, that:

"A foreign corporation which owns a contract, has, as a matter of comity, a right to sue and collect the same in this state (Montana). . . . The right of a creditor to bid in property decreed to be sold in an action brought by him is a valuable one. In many cases it is the only means afforded a creditor of obtaining anything of value from his judgment or decree. That provision of the fourteenth amendment of the Constitution of the United States which provides that 'no state shall deny to any person within its jurisdiction the equal protection of the law' applies to corporations, whether domestic or foreign, the same as individuals. . . . If such a corporation comes into the courts of a state rightfully to have its rights adjudicated, I apprehend for that purpose it is within the jurisdiction of the state."

Regardless of any other question in this case, we construe the provisions of our Code as granting the nonresident alien purchasing property at foreclosure sale the right to hold the same for the full period of twenty years,

"with full power during said time to sell the same in fee to a citizen; or he may retain it by becoming a citizen within that time." It is not only granted the right to hold, but the right to convey a good title to one of our citizens. No obstruction should be by the state thrown in the way of appellee in selling. The record in this case shows that appellee first entered into possession of these lands January 6, 1893; but the conveyance was made to the Joneses September 6, 1895. This contract or conveyance to the Joneses was rescinded and the parties placed *in statu quo* February 16, 1897; and therefore during the period of time from September 6, 1895, to February 16, 1897, appellee did not hold these lands at all, but during said time, the general purpose of the statute to invest ownership in residents of this state was being accomplished.

It is further reflected by the record that on April 28, 1911, the state exhibited its bill of complaint, seeking to escheat these lands, and that a suit, at the instance of the state, has been prosecuted ever since. Counsel for appellee contend that this suit did not operate as an injunction, or prevent appellee from complying with the statute. It is true that appellee might have sold and conveyed the lands pending this litigation, initiated by and prosecuted at the instance of the state, yet, as an everyday common-sense proposition, we are bound to know that the prudent purchaser of real estate would not buy the title at its market price at a time when the state was claiming the right to escheat. The statute expressly protects a *bona fide* purchaser or holder by conveyance from a non-resident alien; but no one could acquire title in the face of the *lis pendens* notice and thereafter contend that he was a *bona fide* purchaser without notice of the state's claim of right to escheat. As a matter of common justice to appellee, and as a proper construction of the statute, we think all time from April 28, 1911, to the date of the final determination of the present suit, should be excluded.

"Where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right. Thus, during the pendency of litigation provoked by defendant's own acts, limitations do not run against plaintiff." 25 Cyc. 1278.

Not only should this time be counted to the date of the final decree by the court below, but the period of time required for disposition of this appeal should also be excluded.

". . . While a plaintiff's right of action is thus suspended by an appeal from the judgment which fixes such right, thus depriving him of the means of enforcing his claim, pending such appeal, limitations will not run until the final disposition of the appeal." 25 Cyc. 1280.

The supreme court of Minnesota, in the case of *St. Paul, etc., Ry. Co.* v. *Olson,* 87 Minn. 117, 91 N. W. 294, 94 Am. St. Rep. 693 says:

"Whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitation has barred his right, even though the statute makes no specific exception in his favor in such cases. *Braun* v. *Sauerwein,* 10 Wall. 218 [19 L. Ed. 895] 19 Am. & Eng. Ency. of Law (2d Ed.) 216."

This is nothing more than common justice; and the rule announced is well supported by authorities.

Under the facts of this case, we believe, also, that the time during which the Joneses held the title should also be excluded. Appellee should not be penalized for rescinding the contract, under the circumstances disclosed in this case. The title conveyed by it had been brought into question, and in an effort to satisfy its vendees, and avoid litigation, it took back its title, and under any view of the case, appellee should not be charged with the time lost by it through its transactions with the Joneses. The

Joneses were residents of Mississippi, and actual set-
tlers upon the lands in question, during the time they held
title. If the time during which the Joneses held title is
eliminated, as well as all time from the filing of the first
suit by the state to escheat to the final disposition of this
appeal, then appellee has a material length of time yet
to its credit for disposing of the lands in accordance with
the conclusions reached by the lower court, and the views
here expressed.

We are not in accord with the view that appellee, in ac-
cepting a reconveyance of the land from the Joneses,
thereby became a purchaser under the statute at a sale
"to enforce payment of the debt" due and owing by the
Joneses. In the first place, this contract seems to have
been one, purely and simply, of rescission, and when
consummated, appellee acquired and was holding the title
originally acquired by it January 6, 1893. In the next
place, we think section 2768, Code 1906, contemplates a
forced sale, and not a private contract whereby the gran-
tor of the mortgage or deed of trust conveys the mort-
gaged premises to the beneficiary in satisfaction of the
secured debt. As said by Dunbar, J., in his dissenting
opinion in the case of *Oregon Mortgage Co.* v. *Carstens,*
16 Wash. 165, 47 Pac. 421, 35 L. R. A. 841:

"If sold under foreclosure some citizen might have
bought in the land. . . . If the mortgage were fore-
closed, the citizen would at least be placed upon an equal
footing with the alien in obtaining title to the land, which
the alien is resorting to to collect his debt 'in the ordi-
nary course of justice.' The object of the constitution evi-
dently was to prevent the acquisition of lands by aliens
as a matter of public policy, and to prevent them from
acquiring lands excepting when it was actually necessary
for the collection of their debts."

The sale mentioned by our statute is a sale "to enforce
payment," an involutary proceeding, whereby the bene-
ficiary deals at arm's length with his mortgagor, and only
buys as a last resort to protect his lien. Any other con-

struction would afford a sure avenue for the acquisition of lands by nonresident aliens, contrary to the statute and policy of the state.

What we have said necessarily leads to an affirmance of this case; and this opinion is written to the end that appellee may deal with its property in accordance with the views here announced.

*Affirmed.*