HARRY V. CURRY v. SANDUSKY FISH COMPANY.[1]

February 6, 1903.

Nos. 13,276—(211).

### Damages—Value of Use.

Where damages are to be assessed for the use of land unlawfully withheld from the person entitled to possession thereof, the latter may recover the value of its use for any legitimate and proper purpose during the time he is deprived of such use.

### Evidence of Experts.

Under the evidence in this case, *held,* that the defendants were prejudiced by the statements of experts, influenced by the results of an established business concerning which they had not sufficient knowledge to base an opinion.

### Evidence Inadmissible.

*Held,* that when it is proper to show the value of the use of real property unlawfully withheld from the person entitled to possession, it is error to permit evidence of isolated benefits and advantages disconnected with the usual course of defendant's occupancy, as under the evidence in this case.

### Taxation of Costs—Disbursements on Appeal.

Since the amendment of rule 9 (80 Minn. v) on April 2, 1901, appellant, if the prevailing party, is entitled to tax disbursements for certifying and printing such matter as is reasonably necessary to present his assignment of errors, though he does not prevail upon all of them.

Appeal by defendant from an order of the district court for Beltrami county, McClenahan, J., denying a motion for a new trial. Reversed, and remanded for a new trial on the question of damages.

*W. E. Rowe* and *Montague & Morrison,* for appellant.

*H. Steenerson* and *Charles Loring,* for respondent.

LOVELY, J.

This action is to recover possession of a small tract of land, which has been occupied by the defendant, on the south shore of

[1] Reported in 93 N. W. 896.

the Lake of the Woods, in Beltrami county, for several years, and for damages for the detention thereof since October 5, 1898.

At the close of the evidence the trial court held as a matter of law that plaintiff was entitled to recover the property in dispute, but submitted the question of damages to the jury. A verdict was returned for plaintiff for $2,450. Defendant moved for a new trial, which was denied. This appeal is from that order.

It appears from the evidence that the land in question was formerly a part of the Red Lake Reservation, which, on October 5, 1898, was opened to settlers under the homestead act. On that day plaintiff made an entry at the local land office of several government lots covering a narrow strip of about one hundred fifty acres, three miles in length and known as "La Claire Point." On the north of this point is the main body of the lake; on the south is what is called the "Four Mile Bay," through which the channel of the Rainy river passes. Plaintiff's entry was accepted, and the usual receipt delivered. About an acre and a half near the extreme end of La Claire Point was occupied at the time with a number of buildings and docks on the inner shore by defendant, which was engaged in catching and curing fish for market. Its occupation of this tract continued from the time of plaintiff's entry at the land office until the trial of the cause some two years and seven months after. It had forty or more employees engaged in its service during the fishing season, and used the land not only for its buildings, but in drying nets, and its occupation of the portion referred to may be regarded as exclusive, except that plaintiff had built a residence upon the land, locating it among the buildings of defendant, wherein he kept a restaurant, and entertained guests. He also operated a barber shop therein for the convenience of the fishermen and others, but made no further use of his homestead than to cultivate a small patch for vegetables. On the day of the entry at the land office an employee of the defendant attempted to make some improvements on the property looking to the assertion of homestead rights for himself, and made a contest based thereon, which was decided in favor of the plaintiff at the local land office, and thence appealed

to the general land commissioner, and by him decided against contestant.

It is insisted that the title to the property between the respective claimants is involved in this action, and that it is our duty to determine the same; but there was clearly a question of fact, depending upon the good faith of the respective claimants, which has been determined by the proper officers of the United States government, and, so far as the right to the possession of the property in dispute is concerned, must be held to be res judicata in this court, from which it follows that the decision of the trial court based upon the entryman's receipt, approved after contest before the commissioner, was determinative of the rights of the plaintiff, in his favor, and must be sustained. McHenry v. Nygaard, 72 Minn. 2, 74 N. W. 1106; Matthews v. O'Brien, 84 Minn. 505, 88 N. W. 12.

The remaining question for the determination of the jury was thus properly confined to the assessment of damages for the occupation of the portion of La Claire Point which had been appropriated and used by defendant's employees, and this involved the claim of plaintiff that a peculiar value attached to the property in dispute for fishing and harbor purposes. The plaintiff attempted to show by witnesses produced to establish his claims in this respect that the land thus occupied by the defendant possessed advantages over any other place on the lake, and that his deprivation of such use largely enhanced his damages for that reason. He endeavored to support this contention by his own evidence and the opinions of several fishermen on the lake, but none of them were acquainted with the full extent of the business of defendant, nor the peculiar use to which it had adapted the same. All of these witnesses estimated the rental value or use of the property actually occupied by defendant during the time between plaintiff's entry and the commencement of the suit in sums not less than $1,000 per annum. Plaintiff had no particular knowledge of the advantages of the grounds for fishing purposes, but his estimate of damages may be regarded as having been authorized upon the ground that he was legally entitled to the exclusive possession of the property.

The other witnesses who testified in his behalf stated that they had been engaged in fishing on the lake, and that this place was adapted to the uses to which it was put by defendant. They testified they knew the value of such use, and upon this foundation were allowed to give their opinions of its yearly rental value; but, while the place selected by the defendant for its business enjoyed superior qualifications as a harbor and place for drying and curing fish, we are not satisfied with the capacity of these expert witnesses to exercise judgment upon the distinct advantages which defendant as a fishing company enjoyed in conducting its enterprise there, and an abiding impression, derived from a careful examination of the whole evidence, remains that the defendant's special use thereof must have entered largely into the judgment of plaintiff's experts in fixing his damages for deprivation of fishing privileges on a sandy tract of land of an acre and a half in extent on the shores of the Lake of the Woods, and this without being based upon any practical knowledge of the real pecuniary benefits which defendant's company realized therefrom, and were we required to dispose of this appeal solely upon the competent and material evidence of plaintiff's witnesses, we should regard it as our duty, in view of what seems to be an unusually large award based upon the very meager and inadequate showing in its support, to set the verdict aside as excessive.

The rule of damages in such a case would undoubtedly be the rental value of that portion of the premises of which plaintiff had been deprived by defendant's adverse occupancy. He was not entitled to the use of the defendant's buildings, nor to be given the profits which were made in the conduct of its business; but he was entitled to the land in its original state for any legitimate purpose to which it was adapted. But our review of the evidence, giving to it the best results in that respect, leads to the impression that the defendant was assessed damages on account of the nature and extent of an established fishery, without taking into consideration the expense and hazards of conducting the same.

Testimony was received from one of plaintiff's witnesses over defendant's objection to the effect that the employees of defendant on one occasion made a catch of fish composed largely of

sturgeon, which filled two sail-boats, and upon evidence which had already been properly received to show that defendant's employees were engaged in the manufacture of caviar prepared from the roe of the sturgeon in one of the buildings on the land, evidence was received over objection that one sturgeon would produce sixteen pounds of caviar; that it was worth eighty-five cents to $1.25 per pound. This evidence was clearly objectionable. Such incidental or isolated success of defendant would not have an appropriate tendency to establish the legal measure of damages to which plaintiff was entitled.

While it is true that a person familiar with an established business, and having sufficient knowledge of the same to lay a foundation for an opinion as to the peculiar value of the use of property detained from another in the conduct of such business, might testify to its value in that respect, and might, on cross examination, be questioned as to the details upon which he based his judgment; yet the reception of this testimony was from a witness unfamiliar with the details of defendant's enterprise, possessing no special knowledge thereof that capacitated him to form an accurate or sensible judgment upon its value, hence the single instance of a successful catch of fish, and the high price paid for the caviar manufactured therefrom, must have prejudiced the defendant by exaggerating possible, but uncertain, profits from the use of the land in question, between which and the production of the Russian delicacy supposed to be peculiarly delectable to the palates of gourmands there was no apparent connection, at least to the general understanding of these witnesses, which was all that qualified them to testify on that subject. The special knowledge of a person competent in this respect would be "caviar to the general"; and not one of these witnesses went further than to show that he was acquainted with the business of ordinary fishing on the Lake of the Woods. It is very probable that this evidence led to what seems to us to have been an exorbitant verdict, and upon this error of the court below, whose general course in endeavoring to control the evidence within proper limits and submit the cause impartially upon the proper rule of damages was not otherwise objectionable. But, for the errors at the trial above

referred to, a new trial must be awarded of the issue as to damages.

Order reversed, and new trial granted, as to question of damages, and not otherwise.

On March 4, 1903, the following opinion was filed:

PER CURIAM.

Since the amendment of April 2, 1901, to rule 9 (80 Minn. v), the appellant, if the prevailing party, is entitled to tax disbursements for certifying and printing such matter as is reasonably necessary to present his assignment of errors, although he does not prevail upon all of them. Ordered, that the clerk's taxation of costs herein be, and it is, affirmed, except as to the item of $5 paid a civil engineer for making a blue print, which is disallowed.