# IN THE MATTER OF ACQUIRING LANDS FOR AN ALLEY.
# FORD MOTOR COMPANY v. CITY OF MINNEAPOLIS.[1]

### November 19, 1920.

### No. 21,962.

**Eminent domain — offset against award and interest.**
    1. The sum which the taker of land under the right of eminent do-

[1]Reported in 179 N. W. 907.

main is entitled to offset against the interest accruing on the award, because of the use made of the land taken by the owner, between the filing of the first award and the payment of the final award, is the fair rental value of the part actually occupied.

**Same — burden of proof.**

2. The burden is upon the party claiming the offset to prove the extent of the use as well as the rental value.

After the former appeal reported in 143 Minn. 392, 173 N. W. 713, the case was tried before Hale, J., who made findings and as conclusions of law found that the Ford Motor Company was entitled to interest at the rate of 6 per cent per annum upon $34,300 from July 30, 1915, to June 23, 1919, amounting in the aggregate to $8,020.58; that the city of Minneapolis was entitled to offset as against such interest the sum of $824.64, being the fair rental value of the use made of the land in question from July 30, 1915, to June 23, 1919; that the Ford Motor Company was entitled to judgment against the city of Minneapolis for the difference between $8,020.58 and $824.64, to wit, the sum of $7,195.94, with interest since June 23, 1919. The motion of the city of Minneapolis to amend the findings and conclusions and for additional findings, was denied. Its motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, the city of Minneapolis appealed. Affirmed.

*C. D. Gould* and *R. S. Wiggin,* for appellant.

*M. D. Purdy,* for respondent.

HOLT, J.

In 1915 the city of Minneapolis started condemnation proceedings for an alley through a block owned by the Ford Motor Company. A large building is upon the westerly half of the block, the easterly half is unoccupied, except for a small shed on the easterly end of lot 8, and a side track and covered loading platform along the southerly side of the block adjoining the Great Northern Railway tracks and right of way. The southerly end of the alley curves to the east, so as to make feasible the construction thereon, at some future day, of railroad tracks connecting with the tracks on the Great Northern right of way. By this curved alley lot 8 is cut in two and a corner cut off from lot 9 which adjoins

lot 8 on the north. Litigation ensued. State v. District Court of Fourth Judicial District, 133 Minn. 221, 158 N. W. 240, and 136 Minn. 475, 162 N. W. 1087. And not until June 23, 1919, were there any available funds to pay the $34,300 damages awarded for the taking. This sum was received under protest, the company claiming also interest from the date of the making and filing of the first award, viz., July 30, 1915. Thereafter an application was made to the court for this interest. It was denied, and upon appeal the order was reversed. Ford Motor Co. v. City of Minneapolis, 143 Minn. 392, 173 N. W. 713. This court held, following prior condemnation cases, that interest should have been allowed on the final award from the date of the original award, and that the "court should have determined the value of the use made of the land in question by the motor company since the date of the original award and should have offset the value of such use against the interest." Pursuant to this direction the court below correctly computed the interest and endeavored to make an offset for use, but the city appeals, claiming the offset was determined on a wrong basis, and the evidence entitled to a finding that the company actually used more than 1,765 square feet of the alley.

It appears that the building erected on the westerly half of the block cost over $600,000. Adding thereto the value of the land of the whole block makes the company's property total $750,000 in value. During the time here in question, the profits received by the company from the business carried on in the building and appurtenances was $2,705,000, or 90 per cent each year on the investment. The city's first contention is that the company should account for the value of the use of this $34,300 alley upon the basis of a 90 per cent a year profit, which approximates $122,000 for the entire period. But a sufficient answer to this contention is the absurdity of the result. If the city is entitled to any part of the sum thus arrived at to offset interest, it is entitled to the whole thereof, and that would result not only in wiping out the interest, but a recovery of the price paid for the alley and over $80,000 additional. It is a poor rule that does not work both ways. Suppose the business carried on by the company had resulted in losses instead of profits, would the city shoulder a proportionate share thereof, or say that the company should not pay at all for the actual use made of the land in

the alley? The method of measuring the value of the use of the alley by the profits made in the business carried on upon the entire plant must be rejected.

But the city says it will be content with taking the value of the alley at the estimate placed on vacant ground in that block, viz., $2.50 a square foot, or in round numbers $10,400, and 90 per cent a year on that sum for the period of occupancy gives $34,000. And by a similar calculation, using 90 per cent a year to determine the rents and profits of the 1,765 square feet which the court found actually used by the company, the city arrives at the sum of $12,000 as the sum it is entitled to offset. Each and all of these methods contended for by the city has the vice of letting the profits of the business determine the rental value or value of the use and occupation of the land upon which the business is carried on.

From the date the first award of damages for the taking of this alley was filed, the relation of the parties to the alley and adjoining land became fixed, conditioned only on the city's election not to abandon the proceeding. From thence on the alley was theoretically for public use, except that, until the compensation for the taking was paid, the company could exclude the public if it saw fit, but the land and the premises of the company adjacent to the alley still remained its absolute property, and the rents and profits issuing therefrom can have no proper bearing at all upon the value of the use that it, or any one else, made of adjoining land, be it an alley or private property. The value of the use of any part of the alley must be measured alike, whether used by the Ford Motor Company, or any other trespasser or occupant. Because it owns adjoining property ought not to place it in either a better or worse position than if its business had been blocks away and it came upon this alley and made the use thereof which the evidence shows it did. When the decisions on the subject before us speak of the value of the use of the land, reference is made to the land taken and not to the part of the lot, block, or farm of which, before the taking, it formed a part. The taking severed the company's ownership of the alley, and thereafter it is not to be considered as a unit of the parts not taken. It is neither of the same premises, nor of the same ownership. The property bordering an alley or street is not an appurtenant

thereto, so that, in estimating the value of the use and occupation of the alley or street, the use or the value of the use of the former may be connected therewith. That the severance of ownership and the taking must be regarded as accomplished at the date when the original award is made and filed, must be taken as settled in this state. Chief Justice Gilfillan in Warren v. First Div. St. Paul & Pac. R. Co. 21 Minn. 424, said:

"The filing of the award of the commissioners is to be deemed a constructive entering upon and taking. The rights of the parties are to be determined as of that time." And that remains true, though the award and successive awards be set aside, and even though the title does not pass, as in fact it does not, until the final award is fully paid. City of Minneapolis v. Wilkin, 30 Minn. 145, 15 N. W. 668.

We think the rule in this state is this: The taker of property by right of eminent domain, to be entitled to any offset upon the interest accruing on the award, has the burden of proving what part of the taken property was actually occupied or used by the former owner, between the filing of the first award and the payment of the damages, and the rental value of the part so occupied or used. That the rental value of the occupied part measures the offset as to urban property, we have no doubt. Whether the former owner is considered in possession under an implied contract to pay for use and occupation, or as a trespasser or disseizor ousted by ejectment and liable for mesne profits, the measure of damages is the same, namely, the fair rental value of the part occupied. G. S. 1913, § 8068, provides: "Damages for withholding the property recovered shall not exceed the fair value of the use of the property, exclusive of the use of improvements made by the defendant." Nash v. Sullivan, 32 Minn. 189, 20 N. W. 144; Noyes v. French Lumbering Co. 80 Minn. 397, 83 N. W. 385; Curry v. Sandusky Fish Co. 88 Minn. 485, 93 N. W. 896. "The rental value * * * means simply the value of the use of land for any purpose for which it is adapted in the hands of a prudent and discreet occupant upon a judicious system of husbandry." Nelson v. Minneapolis & St. Louis Ry. Co. 41 Minn. 131, 42 N. W. 788.

A ruling seemingly to the contrary is found in Poehler v. Reese, 78 Minn. 71, 80 N. W. 847, the finding that the rents, issues and profits of

a farm was $300 being held not sustained, where there was no evidence other than that of a witness who stated the "fair rental value" of the farm to be that amount. No reason is assigned for the rule. There may be a distinction between farm lands and urban property as to mesne profits, for in case of the former the crops result both from the efforts of the husbandry and the soil, whereas the business conducted upon a city lot depends solely on the efforts of the owner for its success.

This distinction is clearly made by the Maryland court. "Where there is occupation of a farm or land used only for agricultural purposes, and the income and profits are of necessity the produce of the soil, the owner may have an account of the proceeds of the crops or other products actually sold or raised thereon, deducting the expense of cultivation. There are necessarily rents and profits in such cases, but even there, it is more usual to arrive at the same result by charging the occupier, as tenant, with a fair annual money rent. But the proprietor of city lots, with improvements thereon, can only derive therefrom as owner, a fair occupation-rent for the purposes for which the premises are adapted. This constitutes the rents and profits in the legal sense of the terms of such property, and is all the owner can justly claim in this shape from the occupier." McLaughlin v. Barnum, 31 Md. 425; Worthington v. Hiss, 70 Md. 172, 16 Atl. 534, 17 Atl. 1026.

The Ford company cannot be charged as trustee. We think the learned trial court applied the correct rule in ascertaining the value of the use made by the company of the platform located on the alley.

We are not convinced that the city so clearly proved that the company actually occupied parts of the alley other than the loading platform of 1,765 square feet, that the findings in that respect should be reversed. To the east of the building the lots were vacant and unimproved, except the shed mentioned. So far as the evidence discloses, the company made no effort to exclude any one from going upon any part of the easterly half of the block, including the alley. Expressmen and others drove across the alley and the adjoining lots without regard to who claimed ownership. There is no testimony that goods were deposited on any part of the alley except the platform mentioned, or that automobiles under the company's direction were parked thereon. It sim-

ply shows desultory driving across the easterly half of the whole block. We find no reversible error in the record.