[Nos. 29116, 29078. *En Banc.* April 7, 1944.]

PUBLIC UTILITY DISTRICT No. 1 OF DOUGLAS COUNTY, *Appellant,* v. THE WASHINGTON WATER POWER COMPANY *et al., Respondents.*

PUBLIC UTILITY DISTRICT No. 1 OF OKANOGAN COUNTY, *Appellant,* v. THE WASHINGTON WATER POWER COMPANY *et al., Respondents and Cross-appellants.*[1]

[1]Reported in 147 P. (2d) 923.

*Houghton, Cluck & Coughlin* and *E. K. Murray,* for appellants.

*Paine, Lowe, Davis & Russell, H. E. T. Herman,* and *Joseph Wicks,* for respondents and cross-appellants.

BLAKE, J.—These cases come up on appeals by both plaintiffs and defendants from judgments entered on verdicts of a jury. The plaintiff in each case is a county-wide public utility district. Each district proposes to acquire all the properties within its confines owned and used by defendant Washington Water Power Company in the generation, transmission, and distribution of electricity.

The Douglas county case was transferred to Okanogan county and consolidated for trial with the case brought in that county. Separate verdicts were returned, upon which the court entered judgments in the respective amounts, with interest from the date of verdicts. The cases have been consolidated on appeal.

Defendants' appeal is directed only at the judgment in the Okanogan county case. The error presented is upon the denial of challenges to four jurors on the ground of implied bias. The appeals of plaintiffs raise two questions: (a) whether the judgments should have provided for the offset of earnings against interest during the periods between the date of the verdicts and date of appropriations, the time when the awards are actually paid; and (b) whether the judgments should have provided for compensation to defendant Washington Water Power Company for improvements and betterments made during such periods.

Since the latter questions are common to the appeals in both cases and, in any event, must be disposed of, we shall discuss them first.

■ The right of the property owner to interest on his judgment and the right of the condemner to have rents, profits, and earnings offset against interest during the period between verdict and appropriations, were first considered by this court in *State ex rel. Donofrio v. Humes,* 34 Wash. 347, 75 Pac. 348. That was an action in mandamus to com-

pel the city of Seattle to issue a warrant for the amount of a condemnation award, with interest from the date of verdict. The trial court granted the writ as prayed for. With respect to the question now under consideration, this court, after citing and quoting from *Plum v. Kansas,* 101 Mo. 525, 14 S. W. 657, 10 L. R. A. 371, said, p. 356:

"In that case it was held, as we have seen, that the judgment of condemnation draws interest, but there, as in the case at bar, the owner remained·in possession for a time, and the court expressly held that it would be inequitable to permit him to recover interest and at the same time retain the benefits of the possession held by him, meanwhile, as trustee for the city. The landholder sought to enjoin the city from taking possession without paying law· ful interest from the date of the award of damages. The court stated that before obtaining relief he should do equity, and should account for rents and profits which accrued to him after the condemnation. Thus, in a measure, the rents and profits were held to offset the interest. But that the one was the necessary legal equivalent of the other was not held. Neither can it be so held here. The rate of interest upon the judgment is fixed by law, but the value of rents and profits depends upon market conditions. We think the rule followed in the Missouri case cited is eminently just, and under that rule the respondents here are not entitled to a warrant including interest, inasmuch as there has been no accounting for rents and profits. If an accounting were here, and an excess of interest over rents appeared, respondents would be entitled to have such excess included in their warrant. On an accounting, however, the city would not be entitled to deduct from the face of the judgment any excess of rents over interest, for the reason that no express contract to pay any sum as rent exists, and since the city has voluntarily permitted the use and occupation, it ought not to be heard to demand a sum in excess of its own fixed interest obligation in the premises."

The purport of·the decision is clear: That an award in condemnation proceedings bears interest from date of verdict; that the property owner is entitled to rents and profits accruing from the property subject to accounting and offset to the extent of accrued interest; that the burden of accounting for rents and profits is upon the property owner.

The question was next before the court in *North Coast R. Co. v. Aumiller*, 61 Wash. 271, 112 Pac. 384. In general, the court approved the rule laid down in the *Donofrio* case. The court, on page 275, quoted from Randolph on Eminent Domain, § 280, as follows:

" 'Where the landowner is left in possession for a time after the date of valuation, the possession has been deemed equivalent to interest. In other decisions possession is not deemed equivalent to interest, as it is permissive only, and does not carry the right to improve the property save at the possessor's risk. The best rule is that which does not arbitrarily make possession equivalent to interest, but allows interest from the date of valuation, and reduces the amount by the estimated value of the possession.' "

The court then said:

"And without further citation, the overwhelming weight of authority is to this effect. It is also to the effect that, inasmuch as the landowner has nothing to do but to receive full compensation before his land shall be taken, the question of whether the possession has been equal to interest on the award is a fact to be established affirmatively by the condemning party."

Interest was allowed in full because there was no showing that the property owner received any rents or profits during the period between verdict and payment of the award. But, in further support of the rule laid down, the court quoted from 2 Lewis, Eminent Domain (3rd ed.), § 742, as follows:

" 'Where damages are assessed for property to be afterwards taken, the award or verdict should include interest from the time with reference to which the damages are estimated, to be reduced by the value of the use of the property to the owner while he continues to have such use. As we have before observed, the estimating and payment of the compensation should be concurrent with the taking. As this is impossible in practice, a time must be selected with reference to which the compensation shall be assessed and to which the title will relate when the compensation is paid. This point of time must necessarily be before the compensation can be paid. Between that time and the payment the owner has only a qualified use of his property.

He may use it as it is, but he cannot improve or sell it except subject to rights acquired by the condemnation. As his just compensation is withheld from him, though necessarily, he should have an equivalent for such withholding, and that, in law, is legal interest. . . .

" 'It is true that, until the company actually takes possession, at the end of the proceedings, the owner has the legal right to possess and use the land. It cannot be assumed that the value of this legal right is equivalent to the interest on the assessed value of the land. From the time of the award, he is practically deprived of his right to dispose of the land. His possession is precarious, liable to be terminated at any time; he cannot safely rent, he cannot safely improve, if he sows he cannot be sure that he will reap. As he is not placed in this position by any act of his own, is not in as a wrongdoer, nor under any contract, there would be no justice in charging him with any assumed value of the use. *Where the owner has actually derived benefit and value from his possession and use between the filing of the award and the assessment by the jury, the value of such possession and use may be ascertained by the jury and the amount of it deducted from the interest allowed.' "* (Italics ours.)

That the rule as stated by the court in the *Aumiller* case has the sanction of a substantial majority of the courts, is beyond cavil. Annotation, 32 A. L. R. 98; note, 96 A. L. R. 150, VIII. (Indeed, many courts go so far as to hold that, where the owner retains possession, interest is not allowable.) See note to *Brown v. United States,* 68 L. Ed. 175, II.

The rule laid down in the *Donofrio* and *Aumiller* cases is predicated on the principle that a property owner in condemnation proceedings is entitled to *just* compensation—no more and no less. That the rule does afford *just* compensation is, we think, apparent under the facts as disclosed by this record. Concerning annual net income upon the properties in Okanogan county, Mr. Robinson, president of the defendant company, testified: "I have estimated that the net before depreciation and before Federal income tax at $200,000 which I think is probably low."

Now, the jury found the value of those properties to be $2,227,531 as of the date of verdict—January 1, 1943. Had

the district been in a position to pay the award at that time, the defendant would have received no interest and no income from the properties. That, in such case, it would have received just compensation in contemplation of Art. I, § 16, of the constitution, could not be denied. Assuming a year will have elapsed between the date of verdict and date of payment, defendant would have us hold that just compensation must include both interest ($133,650) on the amount of the award *and* the full amount of the net earnings from the properties ($200,000). To uphold this position, we think, would accord defendant more than just compensation for its properties. Certainly, to uphold it would not be in accord with the rule laid down in the *Donofrio* and *Aumiller* cases for ascertaining what is just compensation.

If the rule of those decisions is still applicable, the judgments in these cases should have provided for the offset of net earnings against interest on the awards. And that rule is applicable if those decisions have not been overruled. It is not contended that they have been expressly overruled. It remains to be determined, however, whether they have been overruled by necessary implication in the cases of *State ex rel. Washington Public Service Co. v. Superior Court,* 86 Wash. 155, 149 Pac. 652, and *State ex rel. Oregon-Washington Water Service Co. v. Hoquiam,* 155 Wash. 678, 286 Pac. 286, 287 Pac. 670.

In the latter case, it was baldly stated, p. 694: "The property owner is entitled to interest from the date of the award and to the income of the property up to the time that the amount of the award is paid. . . ." In support of the statement, the court cited *North Coast R. Co. v. Aumiller* and *State ex rel. Washington Public Service Co. v. Superior Court, supra.* Obviously, the *Aumiller* decision not only does not support the statement, but also is contrary to it.

The statement is supported, however, by language used in the public service company case—language which the court itself recognized as dictum. That decision was upon an original application by the public service company to

this court for a writ of prohibition to prevent the superior court of Pierce county from entering a judgment of appropriation pending an appeal from an award made in condemnation proceedings brought by the city of Olympia. The judgment which the superior court proposed entering provided for an accounting of earnings against interest from the date of the award. The court said, p. 163:

"Upon the principal grounds urged by the relators, therefore, we do not believe that they are entitled to a writ prohibiting the entry of the judgment and possession by the condemner. We desire to point out, however, that the form of the judgment offered, and which it is the superior court's alleged intention to enter, provides for an accounting from the date of the award of the jury of April 20, 1915. We assume that this is an inadvertence. Upon due consideration, the superior court would doubtless correct that provision. The city is entitled to no accounting of the earnings and profits of the condemned property previous to the payment of the money to the property owner or into court for his benefit."

Obviously, the proposed judgment was not before the court for review. It had never been entered. Recognizing that the language quoted was merely advisory, the court concluded its opinion as follows, p. 164:

"We can only grant or deny the writ in whole. We assume that this minor matter pointed out in the proposed form of decree has only to be called to the attention of the respondents to be corrected and *avoid the necessity of further proceedings in regard thereto.*" (Italics ours.)

Clearly, this decision cannot be said to overrule the *Donofrio* and *Aumiller* cases by implication, for the question decided in those cases was not, and could not properly be, an issue before the court upon the application for the writ of prohibition. So, the public service company decision fails as authority for the statement which we have quoted from State ex rel. *Oregon-Washington Water Service Co. v. Hoquiam, supra.* Since the court cited the *Aumiller* case as *authority* for the statement, it is apparent that it had no intention of repudiating the rule there laid down. Not only was the statement made without supporting au-

thority, but, manifestly, it was also inadvertent. We say this because of the circumstances and manner in which the question was presented to the court. The case came up on appeal by the property owner from judgment on the award. The judgment provided for an offset of earnings against interest. The appellant contended that it should also have provided for compensation for improvements and betterments made and added to the property subsequent to the award and prior to payment of it. Answering this contention, respondent said in its brief:

"In this state the award draws interest at the legal rate from the date of rendition. *North Coast R. Co. v. Aumiller,* 61 Wash. 271; *State ex rel. Donofrio v. Humes,* 34 Wash. 347.

"Interest on the award from August 27, was paid into court for relators.

"City of Hoquiam was not entitled to revenues of the system until it paid the award into court. *State ex rel. Wash. Pub. Serv. Co. v. Court,* 86 Wash. 155.

"The water company was thus doubly compensated from the date of the award. The award drew interest, and it had the revenues of the system."

■ With this concession on the part of respondent, the question as to whether earnings should be offset against interest was moot. The court decided no issue. There was no issue before the court on the question. In effect, the court did nothing more than acquiesce in what amounted to a stipulation between the parties as to their legal rights. Upon a question arising under such circumstances, the court cannot be said to have made a decision, at least not such a decision as to be binding on subsequent litigants, or as establishing a precedent.

Notwithstanding the language used in the *Washington Public Service Company* and the *Hoquiam* cases, we think the decisions in the *Donofrio* and *Aumiller* cases stand unimpaired as authority upon the issue under consideration. Consequently, the judgments should provide for the offset of net earnings of the properties against interest on the awards.

■ The plaintiffs suggested also that the judgments provide for compensation on account of improvements and

betterments made and added to the properties between the entry of the verdicts and the payment of the awards. The trial court, of course, rejected the suggestion upon the theory that, under the decision in the *Hoquiam* case, defendant was entitled to interest on the awards and the earnings from the properties until the awards are paid. The general rule is that improvements and betterments placed upon property condemned for public use are subject to the judgment of award. 2 Lewis, Eminent Domain (3rd ed.), p. 1319, § 742, and p. 1704, § 962. In § 962, it is said:

"The right of the owner to use and enjoy the property until it is actually taken is undoubted. But his right to place improvements upon it and to recover the value of such improvements presents a question of more difficulty. Somewhere in course of the proceedings a point of time must be fixed upon with reference to which the damages shall be assessed and to which the title shall relate. We have heretofore given our reasons for selecting the filing of the petition as the point of time referred to in the absence of any statutory provision. But, wherever that point of time is fixed, up to that point of time the owner may put improvements upon his property and recover their value, *but after that point of time improvements will be made at the risk of being taken without compensation.* This seems to us the plain conclusion from the reason of the matter." (Italics ours.)

This rule, however, may not afford "just compensation" to a public utility the property of which is the subject of condemnation. In proposing that the judgments provide for compensating defendant for improvements and betterments, plaintiffs recognize what is obviously true: That defendant, as a public utility, may be under the necessity of making improvements to and extensions of its physical properties, the cost of which cannot properly be absorbed as expense of maintenance and operation. For any such betterments and improvements as may be reasonably necessary and prudently made between the date of the awards and the orders of appropriation, the defendant is entitled to compensation, and the judgments should so provide.

As stated, defendants' appeal concerns only the Oka-

nogan county case and arises from the court's denial of challenges to four jurors on the ground of implied bias. The challenges were based on the following facts:

The plan under which the utility district proposed to acquire the defendants' properties, contemplated the issuance of revenue bonds payable over a period of thirty years. The four jurors challenged were customers of defendant and residents of the district. They expected to continue the use of the electricity in case the utility district acquires the properties. The defendant excused two of the jurors by peremptory challenges. The other two remained on the jury. Obviously, the two jurors had an interest in the result of the action, for, depending on the amount of the verdict, the rate they would pay as users of electricity for the period of thirty years would be more or less affected. It is asserted that, at common law, their interest, however slight, in the result of the action was sufficient to disqualify them as jurors.

It is questionable whether that assertion is warranted in view of this court's decisions in the cases of *Rathbun v. Thurston County*, 8 Wash. 238, 35 Pac. 1102, and *Mironski v. Snohomish County*, 115 Wash. 586, 197 Pac. 781. In those cases, the court held that the pecuniary interest of a taxpayer is not sufficient to disqualify him as a juror in an action in which the county of which he is a resident is a party. In the latter case, the court, p. 587, gave the following reasons for the ruling:

" . . . this court, in the somewhat early case of *Rathbun v. Thurston County*, 8 Wash. 238, 35 Pac. 1102, held that a tax-payer, called as a juror in an action to recover against a county in which he was a tax-payer, was not subject to a challenge on the ground that he had an interest in the result of the action. [Citing cases.] The rule is rested on the principle that the interest of the tax-payer in the result of the action is so remote, indirect and slight that it may fairly be supposed to be incapable of affecting his judgment. While the rule thus announced, as the appellant argues, may be opposed to the weight of authority, it is not without support in other jurisdictions."

Apart from the decisions, however, we have a statute defining implied bias, Rem. Rev. Stat., § 330 [P. C. § 8495]. In so far as it is pertinent, it provides:

"A challenge for implied bias may be taken for any or all of the following causes, *and not otherwise:* . . .

"4. Interest on the part of the juror in the event of the action, or the principal question involved therein, *excepting always the interest of the juror as a member or citizen of the county or municipal corporation.*" (Italics ours.)

Taking the statute at face value, we think the four jurors challenged were not disqualified as for implied bias. The utility district is a municipal corporation. Laws of 1931, chapter 1, p. 6, § 4 (Rem. Rev. Stat., § 11608 [P. C. § 4498-14]). The jurors are citizens and members of it. Theoretically, there may be said to be some difference in their status as users of electricity and their status as citizens and members of the district. Under the evidence, however, we think any such difference can have no practical effect upon their interest in the result of the action. It appears that eighty per cent of the people of Okanogan county are users of electricity. The two challenged jurors who sat in the case used electricity for residential lighting only. The average annual charge for such service in Okanogan county is $38.20.

Paraphrased, certain language used in the *Rathbun* case, p. 242, stands out with particular significance with respect to the situation presented in this case:

" . . . being [ratepayers] . . . the [jurors] are, to a limited extent, interested. This is an interest that is not taken into consideration by the law. They are qualified jurors in such cases and their verdict must receive the same consideration at the hands of this court as the verdict of a jury in any other case."

The judgment is affirmed on defendants' appeal. On plaintiffs' appeals, the causes will be remanded, with directions to modify the judgments so as to provide for offset of earnings against interest between the date of the verdicts and the date of payment of the awards, and also provide for compensating defendant for any betterments or im-

provements as may be reasonably necessary and prudently made during that period.

JEFFERS, MALLERY, and GRADY, JJ., concur.

BEALS, J. (concurring)—I am in accord with the majority opinion in the conclusion reached on both appeals, but I desire to state some additional reasons which lead me to agree with the majority in the conclusion reached upon the question first discussed by the majority in connection with plaintiffs' appeals. As stated in the opinion, these appeals raise two questions: (a) whether the judgment should have provided for the offset of earnings against interest on the awards for the periods between the dates of the respective judgments and the time when the award shall be paid; and (b) whether the judgments should have provided for compensation to the utility company for improvements made during the periods referred to.

The prior decisions of this court pertinent to proposition (a) are discussed in the majority opinion, and I am in entire accord with the majority opinion in the discussion of these cases.

The matter of the allowance of interest on awards in condemnation cases has been considered by the courts of many states, and it seems to me that some further discussion of these authorities may not be out of place.

As stated by the majority, it has been held in several jurisdictions that no interest upon the award should be allowed during the period the property owner retains possession of the land. For my part, I am convinced, however, that the better rule is that interest should be allowed. It seems clear that that rule is supported by the weight of authority and the better reason.

The property owner is certainly always damaged, to some extent at least, by the fact that a proceeding in condemnation has been instituted, and his beneficial use of the property is further impaired when the value of the land being condemned has been fixed by the verdict. From that time until the amount of the award is paid and possession of the

property taken by the condemner, the value of the property to the owner is manifestly greatly lessened. The allowance of interest on the award covers, to a greater or less extent, such damages, which in most cases cannot be accurately determined. The allowance is not strictly *interest*, but represents a fair equivalent to the owner for the damage suffered.

I have been unable to find any case (save the opinions of this court cited in the majority opinion) in which it has been intimated that the property owner should receive both interest on the award and any profits which have accrued to him from the property between the date of the award and the payment to him of the amount thereof in money, if the profits which he has received exceed the amount of interest computed on the award at the legal rate.

In the case of *Brown v. United States,* 263 U. S. 78, 68 L. Ed. 171, 44 S. Ct. 92, the supreme court had before it for consideration a statute of the state of Idaho which provided that the right to compensation for property condemned and resulting damage to the owner should accrue as of the date of the summons in the condemnation proceeding. The statute referred to having been judicially construed as requiring the payment of interest from the statutory date, the supreme court held that interest should be allowed from that date, even though the owner remained in possession of the property. No question concerning the set-off of profits against interest was raised, the annotator stating:

"It will be observed that the court does not consider in this case the matter of set-off or allowance for rents and profits to the owners who remained in possession, but holds merely that they were entitled to interest."

In the same annotation is found the following:

"There is a conflict of authority on the question indicated in the above title. [Interest in eminent domain proceedings as affected by retention of possession by owner.] Some courts deny the right of the landowner to interest pending condemnation proceedings where he retains possession of the property. Other courts, however, hold that the owner

is entitled to interest notwithstanding the fact that he retains possession, but that the amount of interest must be reduced by the value to him of the rents and profits; in other words, that allowance must be made for possession in computing interest, and the value of such possession to the owner must be set off or accounted for. The better rule would appear to be that which allows interest, but requires the owner to account for rents and profits."

In the later case of *Danforth v. United States,* 308 U. S. 271, 84 L. Ed. 240, 60 S. Ct. 231, the court denied interest to the property owner prior to the date of the taking of possession of the property by the condemner, and distinguished the *Brown* case as based upon the law of Idaho.

In the case of *Lake Koen Nav. Co. v. McLain Land & Inv. Co.,* 69 Kan. 334, 76 Pac. 853, the court said:

"In condemnation appeals the issue is, What shall be full compensation? Interest is allowed merely as a means of securing such compensation. If, upon the condemnation of land, complete deprivation do not follow at once, still, further tenure is rendered precarious. Possession may be disturbed at any time, and all property rights are exercisable only under doubt and uncertainty as to their duration. As a recompense for the loss attending this embarrassed use of the land and this qualification of dominion over it pending the payment of the condemnation money, interest may be allowed. If, however, as a matter of fact the owner should suffer no injury in these respects no occasion for compensation by way of interest would arise. The owner should not have his land and interest too, for the constitution does not contemplate the payment of anything beyond full compensation. It is the better rule, therefore, to allow interest on general damages from the date of condemnation, then reduce the amount by the value, if any, to the owner of whatever subsequent possession and use of the land he has enjoyed."

The supreme court of Michigan, in the case of *Campau v. Detroit,* 225 Mich. 519, 196 N. W. 527, 32 A. L. R. 91, recognized the rule, although in the case then before the court the land being unimproved was incapable of any temporary beneficial use. Concerning the law upon the question under discussion, the court said:

"It is true as defendant's counsel points out that in instituting such proceedings under the Federal law, and of some States, the condemnor may and usually does first take actual possession of the property sought to be condemned, and it is argued that in those jurisdictions where judgment precedes that right, leaving the owner in possession till paid, the beneficial use attending such possession should be construed as the equivalent of interest on the award. Some authorities are found favoring such rule in construction of their statutes. We think the great weight of authority repudiates any such general rule, although generally recognizing that if the owner has not been disturbed in his possession of the premises and has profited thereby, either in receipt of rents or other beneficial use, it should be taken into consideration as an offset to the interest he otherwise would be entitled to, and the same abated accordingly."

The case is reported in 32 A. L. R. 91, the following appearing in the annotation:

"It seems settled according to the authorities in those jurisdictions in which interest is allowed notwithstanding the retention of possession by the owner, that the latter is not entitled both to interest and rents and profits, but must account for the value of the use of the property, and may be required to allow the same by way of set-off against or in reduction of the interest."

The supreme court of Minnesota, in the case of *Warren v. First Division etc.*, 21 Minn. 424, said:

"If, therefore, the allowance of interest upon the amount of the assessment shall be necessary to make the compensation just, we have no doubt of authority in the court to make it; and we think that, generally, it is necessary, to allow interest from the date of the award, to give to the owner just compensation. While the assessed value, if paid at the date taken for the assessment, might be just compensation, it certainly would not be, if payment be delayed, as might happen in many cases, and as did happen in this case, till several years after that time. The difference is the same as between a sale for cash in hand, and a sale on time.

"It is true that until the company actually takes possession, at the end of the proceedings, the owner has the legal right to possess and use the land. It cannot be assumed that the value of this legal right is equivalent to the interest on

the assessed value of the land. From the time of the award, he is practically deprived of his right to dispose of the land. His possession is precarious, liable to be terminated at any time; he cannot safely rent; he cannot safely improve; if he sows, he cannot be sure that he will reap. As he is not placed in this position by any act of his own, is not in as a wrongdoer, nor under any contract, there would be no justice in charging him with any *assumed value* of the use. Where the owner has actually derived benefit and value from his possession and use, between the filing of the award and the assessment by the jury, the value of such possession and use may be ascertained by the jury, and the amount of it deducted from the interest allowed."

In the later case of *Minneapolis v. Wilkin*, 30 Minn. 145, 15 N. W. 668, it was held that the property owner was entitled to interest upon the award prior to payment thereof, the *Warren* case, *supra*, being cited as authority. No question of set-off was considered, but in the later case of *Ford Motor Co. v. Minneapolis*, 143 Minn. 392, 173 N. W. 713, the court discussed both of its prior decisions, holding that profits should be set off against the interest allowed. This rule was followed in *In re Acquiring Lands for an Alley*, 147 Minn. 211, 179 N. W. 907, in which the supreme court of Minnesota required the owner in possession to deduct from the amount of interest due the profits which had accrued to him from the land prior to the payment of the award.

In the case of *Fink v. Newark*, 40 N. J. L. 11, the supreme court of New Jersey adopted the following rule in regard to this question:

"With respect to the claim for interest, in my opinion, the demand should prevail. The statute makes the compensation to be due to the owner of the land in six months after the ratification of the assessment of his damages. If no countervailing assessment for benefits is made within that period no reason appears why the compensation for damages should be withheld; and if withheld without right, it is entirely consonant with the usual practice to add an increase to the claim by way of interest. If the landowner, after the date of ratification, has made any beneficial use of the property condemned, it would seem proper that the value of such use should be taken into account in

diminution of this interest claim, for it must be remembered the sum to be allowed for nonpayment of the damage-money is not strictly interest, but damages for the detention of the money due, and what such damages should be is to be measured by the circumstances of the case."

In the case of *West v. Milwaukee etc. Co.*, 56 Wis. 318, 14 N. W. 292, the supreme court of Wisconsin quoted with approval from the case of *Metler v. Easton etc. R. Co.*, 37 N. J. L. 222, the following:

" 'If the owner has had the profitable use of the premises or has received rents pending the appeal, these circumstances should be taken into account, and interest abated accordingly.' "

In the later case of *Uniacke v. Chicago etc. R. Co.*, 67 Wis. 108, 29 N. W. 899, the supreme court of Wisconsin directed that interest be paid from the date of the award and during the pendency of an appeal, but noted that there should be offset against the interest the value of any profitable use of the land to the owner during this period. The court observed, however, that in the case before it the land had not been put to any profitable use.

In the case of *In re Mayor etc.*, 59 App. Div. 603, 69 N. Y. Supp. 742, the supreme court, appellate division, said:

"We conceive the proper rule in this case to be that interest and taxes are to be added to the award, but, as an offset, a deduction may be made of rentals actually received by the owner, or where rentals have not been received, of the value of the use and occupation of the premises from the date of the appropriation of the property to the time of the award."

On appeal, the decision of the inferior court was affirmed without opinion (167 N. Y. 627, 60 N. E. 1116).

In the cases of *In re Mayor etc.*, 40 App. Div. 281, 58 N. Y. Supp. 58, and *Application of Corporation Counsel*, 258 App. Div. 490, 17 N. Y. S. (2d) 111, it was held that no interest on awards should be allowed, as it appeared that the beneficial use of the property by the owner was an equivalent. In the latter case, interest was allowed from the time the beneficial use ceased.

The opinion of the district court of appeal of California, in the case of *Los Angeles v. Aitken,* 32 Cal. App. (2d) 524, 90 P. (2d) 377, is of interest in connection with the question under discussion, since the court discussed and relied upon, among other authorities, the case of *North Coast R. Co. v. Aumiller,* 61 Wash. 271, 112 Pac. 384, cited and discussed in the majority opinion. After quoting at length from the *Aumiller* case, the California court said:

"We believe that the fairest and most equitable course is followed in the foregoing cases, and therefore take the view that while interest should be allowed, notwithstanding the possession of the owner, the latter is not entitled to both interest and profits resulting from such possession, and such profits may be allowed by way of set-off against the interest, or in reduction thereof. The burden of alleging and proving that such profits were received, and the amount thereof, rests upon the condemnor, as was held in the case of *North Coast R. R. Co. v. Aumiller* (above)."

The supreme courts of Pennsylvania and North Carolina, in the cases of *Wayne v. Pennsylvania R. Co.,* 231 Pa. 512, 80 Atl. 1097, and *Miller v. Asheville,* 112 N. C. 759, 16 S. E. 762, approved the rule allowing interest upon the award, but setting off against the amount of interest the profit accruing to the owner of the land while he remained in possession thereof.

From study of the authorities, I am convinced that the majority opinion lays down the rule which is supported by the weight of authority and reason, to wit, that the owner of property under condemnation, after the fixing of the award to be paid for the property, cannot at the same time enjoy the beneficial use of the land and receive interest on the award, without being required to set off against the interest the actual value accruing to him from the use of the property. The award, until paid and possession taken by the condemner, represents the amount the property owner shall receive for his land. Until he receives payment of the award, he should receive interest by way of damages for the delay in payment, but, if during this period he puts the land to profitable use, the amount of interest to be paid should

be reduced *pro tanto*. If the income from the land exceeds the amount of interest, then the property owner should retain all of the income, but should receive no interest.

I concur in the opinion of the majority.

SIMPSON, C. J. (dissenting)—The majority holds that the jurors called to try the Okanogan county case were not disqualified, one of the reasons being that the statute, Rem. Rev. Stat., § 11608 [P. C. § 4498-14], states that a public utility district is a municipal corporation.

The majority opinion states that there is a theoretical difference between the citizens living in the district who will not be users of electricity and those who will use it. To my mind, there is a very substantial difference. It is a difference measured in dollars and cents. The nonusers would not be interested in the cost of the utility, because they would not be called upon to repay that cost; while the users are vitally interested, because the rates they will have to pay will be determined, first, by the original cost, which would be reflected in the judgment obtained by the company for its property, and, second, in the cost necessary to maintain the utility.

Public utility districts are not municipal corporations serving a public purpose; they are public corporations engaged in a private business for the profit or benefit of the users of their product.

Rem. Rev. Stat., § 11611 [P. C. § 4498-17], provides that public utility district commissioners shall provide for condemnation and purchase by resolutions, which resolutions shall specify and adopt the system or plan proposed. In compliance with the provisions of this statute, Public Utility District No. 1 of Okanogan county, December 21, 1939, passed a resolution, one section of which reads, in part, as follows:

"In order to carry out the plan or system herein specified and adopted, the District shall issue and sell its revenue bonds in an amount not exceeding $2,000,000."

Another portion of the resolution provides for the final payment of the bonds within thirty years. Still another section of the resolution provided:

"The District further binds itself to establish and maintain rates or charges for the electricity generated, transmitted and distributed by means of the public utility system herein established including all works, plants and facilities to be acquired or constructed as provided herein, and all additions and betterments to and extensions thereof which hereafter may be purchased, condemned or constructed, as will provide sufficient revenues to permit the payment of said sums into such special fund which the District has pledged to set aside for the payment of principal and interest and for the Reserve Account as herein provided, to be applied to the payment of the principal and interest of the bonds herein authorized until such bonds and interest shall have been paid in full, and in addition thereto, all costs of operation and maintenance."

The users of electric energy, by being charged for service, are the ones who are now taxed in order to secure the moneys necessary to pay running expenses and the cost of paying the bonds provided for in the resolution. Under present conditions, the average charge to consumers of electric energy in Okanogan county is $38.20, and it will, under present plans, take thirty years to redeem the bonds. It may very well be that the cost of service will increase through the years. These users have a definite financial interest in the original purchase price, for the reason that, the more they have to pay, the higher the charge for service; the lower the price of the utility, the lower the rate. This conclusion is inescapable, in view of the provisions of the statute and the contents of the resolution just quoted.

"The right of trial by jury shall remain inviolate, . . ." Art. I, § 21, constitution of the state of Washington.

"Bias is that which sways the mind toward one opinion rather than another." *Olive v. State,* 11 Neb. 1, 7 N. W. 444, 450.

"Implied" means "virtually involved or included; involved in substance; inferential; tacitly conceded." Web-

ster's New International Dictionary (2d ed.). "Implied," as it is used in law, is contrasted with "express" or "actual." The law implies or includes a bias in situations in which the juror is placed in a position where his interest must necessarily be assumed or inferred.

This court has not interpreted Rem. Rev. Stat., § 330 [P. C. § 8495], by ascertaining the meaning of implied bias, nor are there many cases in the reports dealing with the subject.

"No one ought to be a judge in his own cause; and so inflexible and so manifestly just is this rule, that Lord *Coke* has laid it down that 'even an act of Parliament made against natural equity, as to make a man a judge in his own case, is void in itself; for *jura naturae sunt immutabilia,* and they are *leges legum.'*

"This maxim applies in all cases where judicial functions are to be exercised, and excludes all who are interested, however remotely, from taking part in their exercise. It is not left to the discretion of a judge, or to his sense of decency, to decide whether he shall act or not; all his powers are subject to this absolute limitation; and when his own rights are in question, he has no authority to determine the cause. Nor is it essential that the judge be a party named in the record; if the suit is brought or defended in his interest, or if he is a corporator in a corporation which is a party, or which will be benefited or damnified by the judgment, he is equally excluded as if he were the party named." Cooley's Constitutional Limitations (8th ed.), vol. 2, page 870.

In *Murchison Nat. Bank v. Dunn Oil Mills Co.,* 150 N. C. 683, 64 S. E. 883, a juror was a stockholder in the plaintiff corporation. In passing upon the juror's qualification, the court said:

"The defendants, having exhausted their peremptory challenges, objected to a juror, Samuel Bear, who admitted that he is a stockholder in the plaintiff bank. The court, upon evidence, found that, notwithstanding the fact of his being a stockholder, he was 'a fair and unbiased juror,' and overruled the challenge. In this ruling, we think, there was error. It is very true, the cause of challenge is not one

of those specified in the statute, but they are merely cumulative, and it was not the intention of the Legislature to repeal the fundamental principle of the common law forbidding a person to sit in judgment when his own interests are involved. Whether there are any circumstances which will justify a departure from this elementary rule by reason of the necessity of the case, we need not consider, as no such necessity arose in the trial of the present action. The only question presented is, was the juror competent to sit in the case? He was a stockholder of the plaintiff bank, and therefore had a direct pecuniary interest in the result of the trial. This cannot well be questioned. He was therefore made a judge in his own cause without any sufficient reason in law to sustain the ruling of the court. Whether he was actually biased or not is immaterial. Suppose a plaintiff in a case is called as a juror. Could we hesitate to declare his incompetency? The difference between such a case and the one before us, where the juror is the holder of stock in the plaintiff bank, is one that relates, not to the fact, but to the degree of interest."

The following appears in *Peanut Growers Exchange v. Bobbitt,* 188 N. C. 335, 124 S. E. 625:

" 'The defendant challenged the juror, Cherry, on the ground that he was a member of the plaintiff Peanut Growers Association. The defendant had already exhausted his peremptory challenges. The court examined the juror, Cherry, and, being of the opinion that he was an impartial juror, in its discretion refused to stand him aside.' "

The court, in deciding that the juror was incompetent, based its holdings upon the quotation from *Murchison Nat. Bank v. Dunn Oil Mills Co., supra,* which I have just set out. Accord: *Michigan Air Line R. Co. v. Barnes,* 40 Mich. 383; *Lindsay-Strathmore Irr. Dist. v. Superior Court,* 182 Cal. 315, 187 Pac. 1056.

I maintain that the value fixed upon the property owned by the company in Okanogan county was not obtained by due process of law, because of the fact that certain of the jurors were interested. The constitution of the state of Illinois has provisions similar to ours. In passing upon the

right of an interested party to determine questions involving personal interest, the supreme court of that state, in *Commissioners of Union Drainage Dist. No. 1 v. Smith,* 233 Ill. 417, 84 N. E. 376, 16 L. R. A. (N. S.) 292, stated:

"The present constitution of the State (sec. 2, art. 2,) provides that no person shall be deprived of property without due process of law. Like provisions were found in the Constitution of 1818 and that of 1848. The term 'due process of law' has been often defined. It is doubtful whether any definition affords a test which will enable the courts to determine, in every instance, whether or not any particular statute is in violation of this provision of the constitution. . . . Due process of law, however, does not mean a proceeding pursuant to any law which the legislature may see fit to pass, whether valid or invalid, but does mean 'in the due course of legal proceedings according to those rules and forms which have been established for the protection of private rights.' (*Burdick v. People, supra* [149 Ill. 600].) Judge Cooley, in his work on Constitutional Limitations, at page 356, uses this language: 'Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.'

"In determining what rules and forms have been established for the protection of private rights or what safeguards for the protection of individual rights the settled maxims of the law prescribe in such cases as this, we recognize the primal necessity to be laws providing impartial tribunals for the adjudication of rights. Section 9 of article 2 of the constitution of 1870 provides that in all criminal cases the accused shall be entitled to a speedy public trial by an impartial jury. The laws of the State have always placed about the jury box, both in civil and criminal cases, the greatest safeguards that the ingenuity of our law makers could devise for the purpose of excluding partial, prejudiced, dishonest and interested jurors. Our laws provide for changes of venue, by which the litigant may avoid the necessity of trying his case before a judge or chancellor believed to entertain a prejudice against him. Every constitutional provision that has ever been in effect in this State dealing with the method by which the property of an individual may be forcibly taken away from him, of necessity

contemplated the determination of the question of the right to take that property by an impartial judicial body. By section 20 of article 2, *supra,* we are admonished that 'a frequent recurrence to the fundamental principles of civil government is absolutely necessary to preserve the blessings of liberty.'

"While it is true that in a proceeding such as the one at bar the property owner is not entitled to 'a trial by jury,' within the meaning of that phrase as it is used in the constitution, still it is entirely clear that in providing for a commission to determine the amount of money that shall be collected from each property owner the law of the land forbids the enactment of a statute that permits the selection of a commissioner who personally has a property interest in the result of the deliberations of the body of which he is a member. Self-interest would lead him to seek a low assessment for his own land and assessments correspondingly high for the lands of others. A statute which compels the litigant to submit his controversy to a tribunal of which his adversary is a member makes his antagonist his judge and does not afford due process of law."

To allow these interested jurors to hear and decide the case, destroys, or at least materially impairs, the right of trial by jury as it existed according to the course of the common law and is repugnant to the constitutional guarantee of that right. This would be true even had the legislature determined by statutory enactment that those financially interested, as these jurors were, could sit as members of the jury.

I am unable to agree with the majority in holding that the *Donofrio* and *Aumiller* cases are unimpaired authority for its holding. It is true that the succeeding cases did not, in express terms, overrule the earlier ones. However, the last cases did adopt a new and different rule which should now be considered as the law of this state. Especially is that true of the *Hoquiam* case. That case was heard *En Banc* on two occasions, and two opinions were written. In each opinion, the court reached a unanimous decision. In the last opinion, written after a rehearing had been granted, which appears on page 696 of volume 155, we find the following:

"In this case, since the opinion was filed, a petition has been presented by the water service company and the other parties on that side of the controversy similarly situated, in which we are asked to do two things: First, direct the superior court to strike from the judgment of condemnation and award a certain provision; and second, determine the manner in which the money shall be paid into court as related to the taxes which are to be deducted therefrom.

"Taking these questions up in the order stated, it appears that there is an inconsistency between the judgment and the opinion in one particular. In the judgment it is recited:

" 'That this judgment shall draw interest from August 27, 1929, against which interest shall be credited the net revenues from the operation of said water works system, up to and not exceeding the amount of said interest from said date August 27, 1929, up to the date of taking possession of said water works system by city of Hoquiam.'

"In the opinion, it is said:

" 'The property owner is entitled to interest from the date of the award and to the income of the property up to the time that the amount of the award is paid to the property owner or into court in the manner provided by statute for his benefit.'

"The trial court is directed to strike from the judgment that portion of the paragraph above quoted which is inconsistent with what is said in the quoted portion of the opinion."

This decision overruled the *Donofrio* and *Aumiller* cases as effectively as though they had been referred to directly. This court has on numerous occasions overruled by implication earlier cases without reference to them by title. As an example, see *State v. Brodie*, 7 Wash. 442, 35 Pac. 137; *State v. Lewis*, 35 Wash. 261, 77 Pac. 198; *State v. Vukich*, 158 Wash. 362, 290 Pac. 992.

To hold that interest may be offset by profits is to hold that the condemner has a proprietary interest in the property after entry of judgment, else it would not be entitled to any of the fruits of possession. The error of the holding is in the assumption that the property was actually taken and withdrawn from the possession of its owners by mere entry of judgment. As a matter of fact, the district has no real interest in the property whatever. It only has the

right to make payment of the judgment, with accrued interest thereon, and then gain possession.

MILLARD, ROBINSON, and STEINERT, JJ., concur with SIMPSON, C. J.

July 5, 1944. Petition for rehearing denied.